Mrs. M. E. BLUE et al. v. JOE E. BROWN et al.

(Filed 22 October, 1919.)

1. **Boundary—Title—Evidence—Questions for Jury—Nonsuit—Trials.**

Upon the question of boundary between adjoining lands involving title, the plaintiff claimed the northern half and the defendant the southern half of the original tract from the same owner, and plaintiff's evidence tended to show that the boundary as marked and claimed by him, by eliminating the width of the railroad right of way, would sustain his contention, and that this line was marked and established, and plaintiff bought with knowledge thereof; and that plaintiff had been in adverse possession of the *locus in quo* for thirty or forty years: *Held*, sufficient for the determination of the jury, and a judgment as of nonsuit was properly disallowed.

2. **Appeal and Error—Evidence—Questions and Answers—Objections and Exceptions.**

Upon the rejection of a question asked a witness, it must appear on appeal the testimony sought to be elicited by the answer, or the exception will not be considered.

3. **Appeal and Error—Instructions—Objections and Exceptions—Presumptions.**

It will be assumed on appeal that the evidence on the trial was fairly submitted to the jury when there is no exception to the charge of the judge.

BLUE v. BROWN.

APPEAL by defendant from *Calvert, J.,* at the April Term, 1919, of COLUMBUS.

This is a proceeding to establish the boundary line between plaintiffs and defendants, begun before the clerk and transferred to the Superior Court upon issue joined, and tried upon an issue of title.

The plaintiffs claim title by possession and under a deed from Anne K. Blue to D. M. Blue, dated 24 January, 1870, which conveys the northern half of two tracts of land.

The defendants claim the southern half of these tracts and both parties derive their title from the same source.

A survey was made and the black lines on the map show the contentions of the·plaintiffs, and the red lines those of the defendants.

The land in controversy between the black and red lines is about a half acre wide, and a railroad runs across tht northern half of the land, with a right of way one hundred and thirty feet wide.

One-half the land, nothing else being considered, would place the boundary on the red lines, but if the land covered by the railroad right of way is eliminated, the boundary of the northern half would be substantially on the black line.

Both parties introduced evidence in support of their contention.

At the conclusion of all of the evidence the defendants moved for judg-
ment of nonsuit, which was overruled.

There was a verdict in favor of the plaintiff finding that they were
the owners of the land in controversy and judgment was rendered thereon
against the defendants, who appealed.

*Irvin v. Tucker and H. L. Lyon for plaintiffs.*
*MacRackan & Greer and S. Brown Shepherd for defendants.*

ALLEN, J.   There is ample evidence to establish the contention of the
plaintiffs that the black lines are the true boundaries between the plain-
tiffs and defendants, and also to show title by adverse possession, and
we must assume that this evidence was fairly submitted to the jury as
there is no exception to the charge.

The surveyor testified: "The description in the deed from Ann K.
Blue to Dougald M. Blue covers the land in controversy, and the descrip-
tion in the complaint (which was read to the witness) covers the land
in controversy."

Mrs. A. D. Beal, who said she had known the land for forty years:
"I have lived on the land described in my mother's deed all my life. I
know the corner in dispute. My mother claims black E to be the true
beginning corner of one tract of the land and Mr. Brown claims red A
to be the beginning corner; I don't understand the map. Mr. Smith's
fence was directly on the line when Mr. Brown bought the land. That
is where the surveyors run. The fence was built from the time I was a
child until after I was grown. I do not know when the Browns began
to claim that black E was not the right corner."

W. A. Smith: I know the land in dispute in this action. I owned
the land at one time claimed by the Browns. I am the grantor in the
deed to Crandall Brown. I know the land of Jacob Webb, beginning
at a stake, Mrs. M. E. Blue's corner, containing 53 acres. I know
where the corner is on the map at black D. I know the line from
black D running to black E. I was there when it was run. It was
a marked line. That was the line between Mrs. Blue and myself. I
know where the corner is of the 41 acres in the second tract. A. F. J.
Council ran that line. I know where the corner is at black F. That
is the southeast corner of the 41-acre tract. Red B. It is side of the
railroad. There was a line running from black E at the time I owned
the land. It was a marked line from E to F. I was acquainted with
the corners black E and F. On part of the line there was no trees.
There was an old field. My fence is on that line in front of the house I
sold Mr. Brown. I showed him the land I sold him. I told him the
line was where the fence was. It is the black line on the map. I never
set up any claim to the land between the black line and the railroad.

The black line was on the south side of the railroad, the only line, and was run there first in 1876 by Lovett Malpass, and in 1890 by J. W. Council. I was present when Malpass ran the line. It was run for me. My father and uncle had it run. It was the dividing line between me and my uncle. I don't remember whether the line was visibly fixed in 1876 or not. But in 1890 Mr. Council ran the line and he made a plain line.

"Q. Who was in possession of the land in dispute in 1890?

"My uncle, as long as he lived, and after his death my aunt, Mrs. M. E. Blue, at the time I sold Mr. Grandel Brown the land, I told him the fence was on the line. That is the same land Mrs. Blue now claims."

I. C. Duncan : "I am county surveyor. At black F there was a corner then, along the line is a kind of hedgerow. An old hedgerow. The corner at black F looks as if it had been there several years. From black D to black E, in the first tract, there was a marked line all the way through. I saw a tree in Joe Brown's field marked on both sides, three chops and a blaze. The chops looked as if they were 25 or 30 years old. The tree corresponded, or is in line, with an old line coming out of the green swamp from black E. There is no marked line from red A to red D of either tract."

This evidence, which was accepted by the jury, shows a fence, maintained for many years, a hedgerow and marked lines along the black lines, and possession for thirty or forty years, which fully justifies the verdict of the jury.

The controversy has doubtless arisen because the land covered by the railroad right of way was considered in locating the boundary of the northern half of the two tracts.

This exception to the refusal to nonsuit is the only one relied on in the brief, although one other, sustaining an objection to a question asked a witness, is referred to, but it is not made to appear what answer would have been made and it cannot therefore be considered.

We find no error in the trial.

No error.