SPENCER LEE HEGE AND WIFE, LAURA EDNA HEGE; H. L. BONDURANT AND WIFE, NAN V. BONDURANT; HARRY G. GARRISON AND WIFE, ELLEN B. GARRISON; FRANK E. KILLIAN AND WIFE, SARAH B. KILLIAN; ROBERT E. SLEET AND WIFE, MARY W. SLEET; S. J. MOSES AND WIFE, EDITH L. MOSES; M. D. PRATT AND WIFE, ELIZABETH H. PRATT; QUENTIN COOPER AND WIFE, ERNA S. COOPER; R. T. McMANEUS, JR., AND WIFE, BARBARA McMANEUS; DELBERT M. ALLEN AND WIFE, JULIA F. ALLEN; B. B. FARLOW AND WIFE, SHIRLEY O'B. FARLOW; JOHN M. HUNTER AND WIFE, MARY ANDERSON HUNTER; HENRY J. COOPER AND WIFE, AZILLE S. COOPER; JAMES E. McCLAIN AND WIFE, MARGARET J. McCLAIN; WILLIAM M. EDWARDS AND WIFE, JOHNNIE L. EDWARDS; E. R. GREENE AND WIFE, MARIE K. GREENE; FRED E. BRUNSON AND WIFE, HARRILEE L. BRUNSON; DEWEY S. McHUGH AND WIFE, CLARA V. McHUGH; RICHARD W. STOKER AND WIFE, JANE F. STOKER; AMERICAN TRUST COMPANY, TRUSTEE; HOLLIS P. ALLEN AND WIFE, ALMA C. ALLEN, v. CHARLES G. SELLERS AND WIFE, IRENE T. SELLERS; J. L. SIDES AND WIFE, OPHELIA M. SIDES.

(Filed 15 December, 1954.)

1. **Appeal and Error § 39e—**

The exclusion of evidence cannot be held prejudicial when evidence of the same import is thereafter admitted.

2. **Same—**

Where the record does not show what the answer of the witness would have been, appellant fails to show that the exclusion of the evidence was prejudicial.

3. **Attorney and Client § 9: Evidence § 13—**

It is competent for an attorney who is actively participating in the trial to testify as to matters which transpired in a conference of the parties prior to the controversy for the purpose of contradicting the testimony of a witness of the opposing party as to such matters.

4. **Appeal and Error § 39e—**

Where it does not appear in what way the answer of a witness would have been material or that its exclusion was prejudicial, an exception to the exclusion of the testimony cannot be sustained.

**5. Reformation of Instruments § 6—**

Only the parties to a deed, or those claiming in privity with them, may maintain an action to reform the deed for mutual mistake or mistake induced by fraud.

**6. Same: Deeds § 16b—**

One lot in a subdivision was conveyed direct from the developer to defendant grantees by deed which did not contain any restrictive covenants. The deeds to all the other lots in the development contained restrictions according to a general scheme. *Held:* The real estate agent and the grantees in the other deeds may not maintain an action against defendant grantees and the developer to reform the deed for mistake or fraud so as to have the restrictions inserted in defendant grantees' deed, since plaintiffs are strangers to the chain of title.

**7. Reformation of Instruments § 10—**

In order to reform a deed for mistake or fraud, the proof must be strong, cogent, and convincing.

**8. Reformation of Instruments § 12—**

Testimony of a stranger to the chain of title that in closing the deal for the lot, the agent of grantor gave a printed paper to the attorney for grantees which he stated contained restrictive covenants and which he stated should be attached to the deed before registration, *is held* insufficient to be submitted to the jury in an action to reform the deed on the grounds of mistake or fraud for the purpose of inserting the restrictions in the deed.

**9. Deeds § 16b—**

If restrictive covenants are added to a deed after the deed has been executed, such deed must be re-executed, re-acknowledged, and re-delivered after such addition.

**10. Same—**

A restriction of the enjoyment of property must be created in express terms or by plain and unmistakable implication.

**11. Same—**

Where no restrictive covenants are contained in a deed to a particular lot in a subdivision, and the recorded map shows no restrictions, the grantee therein is not bound by restrictive covenants, notwithstanding his knowledge that all the other lots in the subdivision contain restrictive covenants according to a general scheme, since such grantee is chargeable with notice only of such restrictions as appear in his chain of title, and no notice, however full or formal, can take the place of registration.

**12. Deeds § 16b: Frauds, Statute of, § 9—**

A restrictive covenant creates a negative easement within the Statute of Frauds, and cannot be proved by parol.

**13. Deeds § 16b—**

Restrictive covenants are not favored and will be strictly construed against limitation on use.

PLAINTIFFS' appeal from *McSwain, Special Judge,* 15 February, 1954, Extra Regular Civil Term, MECKLENBURG.

In the year 1948, J. L. Sides and wife, Ophelia M. Sides, began a "high-class, highly restricted residential development," known as Wooded Acres, near the City of Charlotte in Mecklenburg County. The development was laid out in 40 lots of approximately one acre each. The map of the development is recorded in Map Book 6, Pages 23 and 25, Mecklenburg Registry. Thirty of the deeds contained the following restrictions:

"1. All lots contained in this property known as Wooded Acres shall be used for residential purposes only.

"2. The property shall be owned and occupied by the white race only, except domestic servants employed by occupants. No residence erected on said property shall contain less than 1,200 square feet.

"3. No residence erected on said property shall be nearer than 50 feet to the front property line, and residences erected on corner lots must face the street having the shortest frontage. No subdivision of said lots shall be made by sale or otherwise for the purpose of creating additional lots, and only one residence shall be erected on each lot; by one residence is meant a construction designed for use and occupancy of one family.

"4. No garage apartment shall be erected on said property except as an incident to a residence to be later constructed, and such garage apartment must be located at the rear of such lot.

"5. The exterior of no building erected on said lot shall be of block type construction.

"6. A right of way is reserved for the purpose of erecting and maintaining power, telephone, and other public service facilities, together with the right of ingress, egress, and regress over same, and including also the right to trim out trees, or if necessary, to remove certain trees in order to satisfactorily construct and maintain said public service facilities."

Nine deeds omitted the racial restrictions and contained the others. The deed to Lot No. 11, from Sides and wife to C. G. Sellers and wife, contained no restrictions. It was the last deed executed. The map contains no reference to restrictions.

The defendants J. L. Sides and wife, through their agent, Carson Carpenter, made an oral agreement to sell to plaintiff Hollis P. Allen and wife, Alma C. Allen, Lots Nos. 10 and 11; they, in turn, entered into a written agreement to sell them to the defendants C. G. Sellers and wife, Irene T. Sellers. Sides and wife conveyed by deed to Hollis P. Allen and wife Lot No. 10 containing the above restrictions.

On 20 October, 1952, the plaintiff Hollis P. Allen, Carson Carpenter, and the defendant C. G. Sellers, met in the office of Mr. Frank Orr, attorney for Mr. Sellers, to close the transactions. At that time Mr. Allen delivered to Mr. Orr deed from himself and wife to Sellers and wife for

Lot No. 10. The deed contained the same restrictions as those set out in the deed from Sides and wife to Allen and wife. At the same time Carson Carpenter, agent for Mr. Sides, delivered to Mr. Orr a deed for Lot No. 11. While the deed was dated 4 August, 1952, and acknowledged on that date, the name of the grantee was left blank. At the request of Mr. Allen, Mr. Orr's secretary inserted in the Sides deed the names of Charles G. Sellers and wife, Irene T. Sellers, as the grantees.

The plaintiff, Mr. Hollis P. Allen, testified it was his understanding in parol with Sellers that the uniform restrictions should be included in the deed to Lot No. 11. Mr. Sellers testified there was no such agreement. Mr. Allen testified that Mr. Carpenter handed to Mr. Orr a typewritten paper, separate from the deed, which Mr. Carpenter said contained the uniform restrictions and was to be attached to and become a part of the deed before it was filed for registration. Mr. Orr, Mr. Sellers and Mr. Carpenter testified no such restrictions were presented or discussed. After the cancellation of a mortgage on Lot No. 10, payment of the purchase price was made, whereupon Mr. Allen delivered to Mr. Orr, for Sellers, the deed to Lot No. 10. Mr. Carpenter, as agent for Mr. Sides, delivered to Mr. Orr the deed to Lot No. 11. Mr. Orr thereupon filed both deeds for registration.

The plaintiffs, with the exception of Hollis P. Allen and wife, own lots in Wooded Acres, the deeds for which contain the uniform restrictions. They, with Mr. Allen and wife, brought this action, filed an amended complaint covering 20 pages of the record, alleging two causes of action: First, that the uniform restrictions were omitted from the deed to Lot No. 11 by mutual mistake of the parties or by mistake on the part of Sides and wife and Allen and wife, and by fraud on the part of Sellers and wife. They ask that the deed be reformed to include the restrictions. For a second cause of action, the plaintiffs allege that Sellers and wife had actual knowledge that all lots in Wooded Acres were to be sold subject to the uniform restrictions and, having bought with that knowledge, Lot No. 11 is properly subject to the restrictions, and that Sellers' attempt to open a road or street across No. 11 is in violation of restrictions and should be perpetually enjoined.

The defendants C. G. Sellers and wife filed answer, denying any agreement that Lot No. 11 should contain any restrictions or that there was any mistake or fraud on the part of any of the parties to the transaction. They allege the deed was executed in accordance with the contract, and, further, that they had no notice of the uniform restrictions; that they are charged with such notice only as appears in the documents constituting their chain of title; and that such documents are entirely free of restriction. They claim, therefore, that they are entitled to open a road or street across Lot No. 11 if they so desire.

The defendants J. L. Sides and wife filed answer in which they deny there was any intention to apply restrictions other than those which appear in the various deeds to the several lots. "That they had a right to convey one or more of the lots . . . without restrictions if they chose to do so. In this connection it is pointed out that because of the unusual topography of Lot No. 11 it was not suitable for a homesite but could only be used for something like a road . . ." They deny any agreement with Allen and wife that restrictions should apply to Lot No. 11.

The contract entered into on 25 September, 1952, between H. P. Allen, realtor-agent, and Mr. C. G. Sellers and wife, Irene T. Sellers, for Lots Nos. 10 and 11, was introduced in evidence. The pertinent parts are: "It is understood and agreed that said property will be conveyed subject to such conditions, reservations and restrictions as appear in instruments constituting chain of title and subject, also, to zoning laws. . . . This contract constitutes the final and entire agreement between the parties hereto and they shall not be bound by any terms, conditions, statements or representations, oral or written, not herein contained."

Much evidence was offered by the parties. However, in the view we take of the case, evaluation of the evidence is not determinative of the issues here involved, and its repetition even in substance is, therefore, unnecessary.

At the close of the evidence for plaintiffs, the defendants moved for judgment of nonsuit. The motion was denied. At the close of all the evidence, the motion was renewed with the following results: The defendants, by stipulation and agreement, were permanently enjoined from opening a street or road across Lot No. 10. The motion for nonsuit on the cause of action to reform the deed to Lot No. 11 and to impose restrictions on that lot were allowed. The temporary restraining order prohibiting the construction of a road or street over Lot No. 11 was dissolved. Judgment was signed, to which plaintiffs objected, excepted, and from which they appealed.

*Francis H. Fairley for plaintiffs, appellants.*

*Orr & Osborne, by Frank W. Orr, for defendants Sellers and wife, appellees.*

*McDougle, Ervin, Horack & Snepp, by Frank W. Snepp, for defendants Sides and wife, appellees.*

HIGGINS, J. During the course of the trial plaintiffs sought to prove by parol the date of the deed executed to the defendants Sellers and wife by the defendants Sides and wife. Objection to the testimony was sustained and became the basis of plaintiffs' Exception No. 7 and Assignment of Error No. 2. Ordinarily, parol evidence is incompetent to prove the

contents of a written document. However, in this case the deed itself was later introduced in evidence by the plaintiffs. The exception, therefore, is without merit.

Other exceptions, 1 through 16, were taken to the ruling of the court in sustaining objections to questions asked plaintiffs' witnesses by their counsel. These exceptions form the basis of plaintiffs' assignments of error 1 and 3. In each instance the record fails to disclose what the answers to the questions would have been. In the absence of the answer there is nothing to show that the plaintiffs were prejudiced. Therefore, the exceptions cannot be considered. *Blue v. Brown,* 178 N.C. 334, 100 S.E. 518; *Hall v. Hall,* 179 N.C. 571, 103 S.E. 136.

Exception No. 17 is to the ruling of the court in sustaining objection to a question asked plaintiff Spencer Lee Hege by plaintiffs' counsel, referring to Mr. Sides as follows: "Did he tell you he had sent that deed to Lot No. 11 to his agent, Carson Carpenter, to be delivered to Mr. Allen?" While the record shows the objection was sustained, the record also shows the following answer: "He told me he sent the deed to his agent, Mr. Carson Carpenter, to be delivered to Mr. Hollis Allen. He didn't say how the deed was sent." There is nothing to indicate the answer was made in the absence of the jury. Later on plaintiffs called Mr. Sides as a witness and he testified: "I never had any conversation with a Mr. Hollis P. Allen or with Mr. C. G. Sellers about the sale of the two lots." Mr. Sides further testified for the plaintiff: "I don't recall executing the deed, plaintiffs' Exhibit F, to Lot 11, but it was signed and acknowledged by me and my wife. I mailed or sent this deed to my agent, Mr. Carson R. Carpenter." There was, therefore, no dispute about the delivery of the deed by Sides to his agent, Carpenter. The method of delivery was immaterial. Exception No. 17, therefore, is without merit.

Plaintiffs' Exceptions Nos. 18, 19 and 20 relate to the testimony of Mr. Frank Orr, an attorney for C. G. Sellers and wife, on the ground that Mr. Orr was actively participating as attorney in the trial of the case. In passing on the propriety of Mr. Orr's testimony, it must be remembered that Mr. Allen had testified as follows: "At the closing, I think Mr. Sellers was present. I am not certain whether he was there or not; I don't think he was. I remember Mr. Carson Carpenter and Mr. Frank Orr were there at Mr. Orr's office . . . at the end of the deal the money was passed and the deeds delivered. Mr. Carpenter passed a restriction, a printed restriction across Mr. Orr's desk and made the statement, as I remember, that these were supposed to be attached to the deed before they were filed; before filing." Mr. Orr testified: "On or about October 20, 1952, Mr. Sellers, Mr. Carpenter and Mr. Allen came to my office to close the transaction. Mr. Allen had the deed for Lot No. 10. Mr. Carpenter had the deed for Lot No. 11 . . . Mr. Carpenter handed me this deed for

Lot No. 11 just exactly the way it is here . . . Mr. Allen handed me the deed for Lot No. 10 . . . In the meantime this paper, this deed for Lot No. 11 did not have the names of Mr. and Mrs. Sellers in it. Mr. Carpenter asked me to have my stenographer put those names in there and that is what I did . . . In the meantime Mr. Allen held his deed for Lot No. 10. Mr. Carpenter held the deed for Lot No. 11 until we got to the courthouse, and when Mr. Carpenter signed the mortgage and canceled it, I gave Mr. Allen the check for $3,450, he handed me the deed for Lot No. 10. Mr. Carpenter handed me this deed for Lot No. 11, I walked right in the Register's office and filed the papers for recordation and that is all that happened." Under the circumstances it was not error for Mr. Orr to testify.

Exceptions 21 and 22 relate to the action of the trial judge in sustaining objections to questions asked the defendant Sellers if he did not expect to make a profit out of his investment in lands back of Lot No. 11. It does not appear in what way the answer would have been material, or that excluding the testimony was prejudicial.

Exception No. 23 relates to the judgment of nonsuit entered at the close of all the evidence. Judgment of nonsuit was required for a number of reasons. To begin with, none of the plaintiffs were in privity of estate with either the defendants Sides or the defendants Sellers with respect to the title to Lot No. 11. This is a fatal defect in a suit to correct or reform a written instrument. In the case of *Sills v. Ford,* 171 N.C. 733, 88 S.E. 636, this Court said: "The authorities are uniform in holding that the relief of reformation of a written instrument will be granted to the original parties thereto and to those claiming under or through them in privity. In all cases of mistake in written instruments, courts of equity will interfere only as between the original parties or those claiming under them in privity." It is true that Hollis P. Allen made a contract to sell Lots Nos. 10 and 11 to the defendants C. G. Sellers and wife. He owned and could sell and convey Lot No. 10. He did not own and could not convey Lot No. 11. His negotiations to purchase Lot No. 11 from Mr. Sides through his agent, Mr. Carpenter, were entirely in parol and void under the statute of frauds. When the deed was made it was made from Sides, the owner, to Sellers, the purchaser. Allen is a stranger to the chain of title. He never had any enforceable right to Lot No. 11. He is not an owner of any of the lots in Wooded Acres. The contract entered into between H. P. Allen and C. G. Sellers and wife, Irene T. Sellers, shows upon its face that Allen was acting not as owner, but as agent for someone else. The contract states: "Through H. P. Allen, Realtor, Agent . . . has this day sold, and C. G. Sellers and wife, Irene T. Sellers, has this day purchased that certain parcel of land known as Lots Nos. 10 and 11, in Wooded Acres according to map or plat of same"

. . . "It is understood and agreed that said property will be conveyed subject to such conditions, reservations and restrictions as appear in instruments constituting chain of title and subject also to zoning laws . . . This contract contains the final and entire agreement between the parties hereto and they shall not be bound by any terms, conditions, statements or representations, oral or written, not herein contained."

Sides was the owner who originated the development. His deed to the defendants Sellers and wife constitutes the only conveyance in the chain of title. It contains no reservations. Mr. Sides' assertion in his verified answer was introduced in evidence, as follows: "It is denied that there was any agreement between these answering defendants and H. P. Allen and wife concerning the restrictions on either of said lots, except the reservations appearing in the deeds."

Carpenter testified there were no restrictions attached to Lot No. 11 when the deed was delivered or at any other time. Sellers and Orr testified no restrictions were attached. The recorded deed bears them out. To the contrary is the very inconclusive evidence of Allen, who says: "I remember when we got through negotiating the figures that Mr. Carpenter taking this little printed form out, and tossing it across the desk and saying, 'This should be attached before the deed is filed.' I remember that, there was a special reason why I remember it. I did not read the paper. It was similar, very similar, it was an exact copy of what I had when I bought the lot before, the first lot. I did not read it. Mr. Carpenter said there were restrictions on it. He said there were restrictions. I am going by what he said."

When a solemn document like a deed is revised by court of equity, the proof of mistake must be strong, cogent and convincing. What were the restrictions omitted? Allen did not read them. He testified Carpenter says they were restrictions. "I am going by what he said." The evidence is insufficient to show mutual mistake or a mistake induced by fraud. When a deed is executed and delivered, neither restrictions nor other material matters can be added by the parties. If restrictions are to be added it must be by another written instrument, or, if added to the original, it must be re-executed, re-acknowledged, and re-delivered after the additions.

What effect the entry of the names of the grantees after the execution and acknowledgment of the deed to Lot No. 11 by Sides and wife would have on the validity of the deed, and whether, if invalid, Allen and wife and Sides and wife are now in a position to contest its validity, are questions not presented on this record. All parties in their pleadings, evidence and briefs seem to have treated the deed as valid, contesting only the issue as to whether it is, or should be subject to restrictions.

A restriction of the enjoyment of property must be created in express terms or by plain and unmistakable implication. *Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E. 2d 134; *Ivey v. Blythe*, 193 N.C. 705, 138 S.E. 2.

It is patent the evidence falls short of legal requirements for submission to the jury on the issue as to whether the restrictions were omitted by mutual mistake. There isn't a suggestion of fraud.

"The very essence of the doctrine allowing relief from inadvertence or mutual mistake is the desire of the law to execute the original intention and agreement of the parties." *Davis v. Robinson*, 189 N.C. 589, 127 S.E. 697.

The remaining question is whether the defendants C. G. Sellers and wife in accepting a deed without restriction, nevertheless were charged with such notice of the plans and purposes in the development of Wooded Acres as would make the uniform restrictions applicable to Lot No. 11. As has already been pointed out, no restrictions appear in the chain of title to that lot. No notice, therefore, can be found in the line of title. The recorded map shows no restrictions. "The law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such examination would disclose. In consequence, a purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed." *Higdon v. Jaffa*, 231 N.C. 242, 56 S.E. 2d 661; *Sheets v. Dillon*, 221 N.C. 426, 20 S.E. 2d 344; *Turner v. Glenn*, 220 N.C. 620, 18 S.E. 2d 197. Since the effective date of the Connor Act, 1 December, 1885, in matters involving the title to land it is intended that the public registry should be the source of notice. Since then it is considered not enough to send word by the mail boy. Notice, however full and formal, cannot take the place of registered documents. *Austin v. Staten*, 126 N.C. 783, 36 S.E. 338; *Hinton v. Williams*, 170 N.C. 115, 86 S.E. 994; *Blacknall v. Hancock*, 182 N.C. 369, 109 S.E. 72.

"If purchasers wish to acquire a right of way or other easement over the lands of their grantor, it is very easy to have it so declared in the deed of conveyance. It would be a dangerous invasion of rights of property, after many years and after the removal by death or otherwise of the original parties to the deed, and conditions have changed, to impose by implication upon the slippery memory of witnesses such burdens on land." *Davis v. Robinson, supra; Milliken v. Denny*, 141 N.C. 224, 53 S.E. 867. A building restriction is a negative easement and within the statute of frauds. It cannot be proved by parol. A verbal contract for a right of easement is void under the statute of frauds. *Davis v. Robinson, supra.*

Restrictive covenants are not favored. As was said by this Court in *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619, "Further, it is to be noted that we adhere to the rule that since these restrictive servitudes are in derogation of the free and unfettered use of land, covenants and agreements imposing them are to be strictly construed against limitation on use. *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620." The courts are not inclined to put restrictions in deeds.where the parties left them out.

For the reasons given, the judgment of the court below is
Affirmed.