ST. LUKE'S EPISCOPAL CHURCH v. JOHN C. BERRY AND WIFE, LOUISE
G. BERRY; HOMER L. RILEY AND WIFE, MARTHA G. RILEY; HAR-
VEY HOLT AND WIFE, LUCY NEVILLE HOLT; SHUFORD P. DOB-
SON AND WIFE, JULIA C. DOBSON; B. W. CRABTREE AND WIFE,
FRANCES C. CRABTREE; BERNARD C. GREGORY AND WIFE, ROSE
GREGORY; HERBERT J. FOX AND WIFE, FRANCES H. FOX

No. 6814SC332

(Filed 23 October 1968)

**1. Deeds § 19— restrictive covenants — recorded deeds from previous
title holders**

A purchaser of real property in North Carolina must examine all re-
corded "out" conveyances made by prior record title holders during the
periods when they respectively held title to the property to determine if
any such owner has expressly imposed a restriction upon the use of the
property.

**2. Deeds § 19— restrictive covenants — prior recorded deeds f r o m
grantor**

Where neither the deed from a subdivision developer conveying to plain-
tiff particular subdivision lots nor the recorded subdivision plat contains
restrictive covenants, plaintiff is not bound by restrictive covenants in
previously recorded deeds from his grantor conveying other lots in the
subdivision unless such a deed has clearly and expressly imposed a re-
striction on the use of plaintiff's property, an implied intention to make
the restrictions applicable to all lots in the subdivision by the fact the
previous deeds contained uniform restrictions or by an analysis of the
language used in the previous deeds being insufficient to place a restric-
tion on plaintiff's property.

BROCK, J., dissenting.

APPEAL by defendants Berry, Holt, Dobson and Gregory from
*Hall, J.,* 13 May 1968 Civil Session of DURHAM Superior Court.

This is an action for a declaratory judgment brought by the
plaintiff, St. Luke's Episcopal Church, to determine whether certain
restrictive covenants are applicable to lots acquired by it in a real
estate subdivision on which it plans to erect a church building. De-
fendants are owners of other lots in the same subdivision who ac-
quired record title to their lots prior to the time plaintiff acquired
title to its lots. The restrictive covenants in question limiting use to
residential purposes were contained in deeds from the original
grantor developers through which defendants derive title to their
lots. There were no restrictive covenants in the deeds subsequently
given by the same grantor developers when they conveyed lots to
the plaintiff.

The parties waived jury trial and submitted the case on stipula-

tions and evidence. The facts, as to which there is no material dispute, may be summarized as follows:

Mrs. Frances Hill Fox was the owner of an undeveloped tract of land in the City of Durham which she had acquired by deed from her father in 1948. In June 1955 she subdivided the tract into sixteen numbered lots with appropriate intervening and adjoining streets and sewer easements and showed these on a plat of the subdivision prepared by an engineer. After this plat had been submitted to and approved by the appropriate city authorities, it was recorded on 28 December 1955 in Plat Book 31, Page 27, in the office of the Register of Deeds of Durham County. The plat is entitled "Property of Mrs. Frances Hill Fox, Durham, N. C., June 1955," and shows the lots, streets, and sewer easements, but makes no reference to any restrictions except for a notation that "no building or structure (is) permitted on sewer easement."

On 29 June 1955 and prior to recording the plat, Mrs. Fox and her husband had conveyed lot #1 of the subdivision to the defendants, Homer L. Riley and wife, by deed containing the following restriction:

"That this property shall be used for residential purposes only and is limited to one residence being built on said described property, and no other building except a garage, shall be built on said premises."

The defendants Riley and the original grantors, Mrs. Fox and her husband, who are also defendants in this action, are not involved in this appeal.

Following recording of the plat, Mrs. Fox and her husband from time to time sold and conveyed six of the lots, being lots #2, 3, 13, 14, 15 and 16, by various deeds through which ultimately the appealing defendants derived title. Each of the deeds by which these six lots were conveyed, following the description of the property being conveyed by metes and bounds and by reference to the recorded plat, contained the following:

"This property is sold subject to the following restrictions:

1. The property shall be used for residential purposes only, and no buildings other than one residence, except garages or outhouses for domestic purposes, shall be built on a lot as shown in Plat Book 31, page 27.

&ast; &ast; &ast; &ast; &ast;

3. That not more than a one-family unit shall be constructed upon a lot, . . .

&ast; &ast; &ast; &ast; &ast;

7. That the above restrictive covenants shall not apply to Lots 7 and 8 as shown on the plat referred to, being recorded in Plat Book 31, page 27, in the Office of the Register of Deeds of Durham County."

The appealing defendants Berry, Holt, Dobson and Gregory are the present owners of record of these six lots and have built their residences on four of the lots. Lot #8 and portions of lots #7, 9, 10, 11 and 12, were taken by the State Highway Commission for use in construction of Interstate Highway #85.

Following the above-described transactions and after the appealing defendants had recorded their deeds and had built their residences on four of their six lots, Mrs. Fox and her husband conveyed lots #4 and 5 by deed dated 27 June 1966 and lots #6, 7, 9 and 10 (except for such portions of lots #7, 9 and 10 as had theretofore been taken for highway purposes) to the plaintiff church. The two deeds to the plaintiff church described the property being conveyed by metes and bounds as well as by reference to the recorded plat. However, neither deed to the church contained any restrictions or referred to any other deeds which previously had been given by the grantors when they had conveyed other lots in the subdivision subject to restrictions. Before plaintiff purchased its first two lots in June 1966, the Senior Warden of its Vestry who, with others, conducted negotiations on behalf of the church for acquisition of the property from Mrs. Fox, had seen a copy of the deed executed 6 February 1956 from Mrs. Fox and her husband to the defendants Berry, which deed contained the restrictions as above set forth. The plaintiff proposes to erect a church building on a portion of the property conveyed to it, other than on lot #7. So far as appears from the record, Mrs. Fox remains the owner of two of the original sixteen lots, being lots #11 and 12.

The trial judge entered judgment making findings of fact substantially as above set forth and concluding as a matter of law that the restrictive covenants appearing in defendants' deeds do not appear in the chain or line of title for the plaintiff's property and are therefore not applicable to the plaintiff's property. From judgment entered in conformity with this conclusion, the defendants Berry, Holt, Dobson and Gregory appeal.

*Nye & Mitchell by R. Roy Mitchell, Jr., and Hofler, Mount & White by Richard M. Hutson, II, for plaintiff appellee.*

*Smith, Moore, Smith, Schell & Hunter by Doris R. Bray for defendant appellants.*

PARKER, J.

No restrictive covenants appear in any deed in the direct line of plaintiff's chain of title, and the question presented by this appeal is whether plaintiff's lots are nevertheless bound by restrictive covenants contained in deeds previously given by plaintiff's grantors conveying other lots to other grantees. The question posed is of importance to all concerned with land titles in our State (see: Webster, *The Quest for Clear Land Titles; The Burden of Searching the Record for Instruments Outside the Vendor's Chain of Title*, 46 N.C.L. Rev. 295), as well as in other jurisdictions (see: Ryckman, *Notice and the "Deeds Out" Problem*, 64 Michigan Law Rev. 421; Annotations, 16 A.L.R. 1013; 60 A.L.R. 1216; 144 A.L.R. 916; 4 A.L.R. 2d 1364). On the one hand concern must be given to the rights of those who, as did each of the appealing defendants in this case, invest their funds in homes on lots in a subdivision acquired under deeds expressly imposing restrictions, such persons having a legitimate interest in knowing that all other lots in the subdivision are similarly restricted. On the other hand concern must be given to the problem of maintaining marketable land titles, so that real property throughout the State can be traded readily and without the burden of unnecessarily tedious and excessively expensive title searches. The correct balancing of these sometimes countervailing concerns is not always easy.

Prior to the decision in the case of *Reed v. Elmore*, 246 N.C. 221, 98 S.E. 2d 360, decided in 1957, the law appeared to be settled that the purchaser of land in North Carolina was chargeable with notice of, and his lands were consequently affected by, a restrictive covenant only if such covenant was contained or referred to in a recorded deed or other instrument *in his direct line of title*. Such was the holding in the cases of *Turner v. Glenn*, 220 N.C. 620, 18 S.E. 2d 197, and *Hege v. Sellers*, 241 N.C. 240, 84 S.E. 2d 892.

In *Turner v. Glenn, supra,* decided in 1942, a realty development company had subdivided a tract of 214 acres into 596 lots in a subdivision known as Sunset Hills. A large number of lots were sold subject to restrictions. Plaintiff Turner acquired his lots by foreclosure of deeds of trust given by the development company. One of these deeds of trust and the deed in foreclosure thereof given to Turner contained the following: "The above described property is conveyed subject . . . to the usual restrictions of the use and reservations placed by A. K. Moore Realty Company on property similarly situated in Sunset Hills." The other deed of trust and deed to Turner contained the following: "Subject to customary restric-

tions of the use and reservations reserved by A. K. Moore Realty Company in the conveyances of lots fronting Madison Avenue in Block 1, Section 1, Sunset Hills." In a suit by Turner to remove a cloud on title to his lots the North Carolina Supreme Court held that he was entitled to a decree adjudging that his lots were clear of any restrictions. Barnhill, J. (later C.J.) speaking for the Court, said (p. 626):

> ". . . No deed in the chain of title to either of the lots owned by plaintiff sets forth any particular restrictions or reservations and no reference is made to any other instrument of record which sufficiently discloses what are the 'customary restrictions in conveyances of lots fronting Madison Avenue in Block 1, Section 1, Sunset Hills,' or what are the 'usual restrictions of the use and reservations placed by A. K. Moore Realty Company on property similarly situated in Sunset Hills.' Notwithstanding the general provision in the deeds of the plaintiffs they took without notice of any restrictions or reservations such as would be binding on them.

> "As stated, it is the duty of a purchaser of land to examine every recorded deed or instrument in his line of title and he is conclusively presumed to know the contents of such instruments and is put on notice of any fact or circumstance affecting his title which either of such instruments reasonably discloses. *He is not, however, required to examine collateral conveyances of other property by any one of his predecessors in title.*" (Emphasis added.)

In *Hege v. Sellers, supra,* decided in 1954, the owners subdivided a tract of land into 40 lots of approximately one acre each in a "high-class, highly restricted residential development," known as Wooded Acres. Thirty-nine deeds were given, all of which contained, among other restrictions, provision that "(a)ll lots contained in this property known as Wooded Acres shall be used for residential purposes only." Thereafter a fortieth deed was given conveying lot #11 to the defendants. This last deed contained no restrictions. The plaintiffs, owners of lots in Wooded Acres under deeds which contained the uniform restrictions, brought suit to have defendants' lot declared subject to the restrictions and to restrain defendants from violating them. Judgment of nonsuit was affirmed on appeal by unanimous decision of the Supreme Court. Higgins, J., speaking for the Court, said (p. 248):

> "The remaining question is whether the defendants C. G. Sellers and wife in accepting a deed without restriction, never-

theless were charged with such notice of the plans and purposes in the development of Wooded Acres as would make the uniform restrictions applicable to Lot No. 11. As has already been pointed out, no restrictions appear in the chain of title to that lot. No notice, therefore, can be found in the line of title. The recorded map shows no restrictions. 'The law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such examination would disclose. In consequence, a purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed.' *Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661; *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344; *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197. Since the effective date of the Connor Act, 1 December, 1885, in matters involving the title to land it is intended that the public registry should be the source of notice. Since then it is considered not enough to send word by the mail boy. Notice, however full and formal, cannot take the place of registered documents. *Austin v. Staten,* 126 N.C. 783, 36 S.E. 338; *Hinton v. Williams,* 170 N.C. 115, 86 S.E. 994; *Blacknall v. Hancock,* 182 N.C. 369, 109 S.E. 72.

" 'If purchasers wish to acquire a right of way or other easement over the lands of their grantor, it is very easy to have it so declared in the deed of conveyance. It would be a dangerous invasion of rights of property, after many years and after the removal by death or otherwise of the original parties to the deed, and conditions have changed, to impose by implication upon the slippery memory of witnesses such burdens on land.' *Davis v. Robinson, supra; Milliken v. Denny,* 141 N.C. 224, 53 S.E. 867. A building restriction is a negative easement and within the statute of frauds. It cannot be proved by parol. A verbal contract for a right of easement is void under the statute of frauds. *Davis v. Robinson, supra.*

"Restrictive covenants are not favored. As was said by this Court in *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619, 'Further, it is to be noted that we adhere to the rule that since these restrictive servitudes are in derogation of the free and unfettered use of land, covenants and agreements imposing them are to be strictly construed against limitation on use. *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620.' The courts

are not inclined to put restrictions in deeds where the parties left them out."

In *Reed v. Elmore, supra,* decided in 1957, a landowner had divided a tract into seven lots and sold five without restrictions. She conveyed lot #3 to plaintiff by deed stipulating that the land therein conveyed should be subject to the restriction that no structure be erected thereon within a stipulated distance of the public road. The deed further provided: "This restriction shall likewise apply to Lot No. 4, retained by the grantor, said Lot No. 4 being adjacent to' the lands hereby conveyed." Plaintiff recorded his deed. Subsequently the original owner developer conveyed lot #4 by deed containing no reference to the restriction and defendant obtained title to this lot by mesne conveyances. In an action by plaintiff owner of lot #3 brought to restrain defendant from building on lot #4 in contravention of the restriction, the trial court held that the deed from the original owner to the plaintiff imposed reciprocal negative easements on lot #3 sold to plaintiff and lot #4 retained by the grantor, and registration of this deed put those who thereafter acquired any interest in lot #4 on notice of the servitude imposed on that tract. On appeal from a judgment enforcing the restriction on lot #4, a majority of the Supreme Court affirmed.

In the instant case appellants earnestly contend that the rights of the parties are controlled by the decision in *Reed v. Elmore, supra.* They point to their prior recorded deeds which contained uniform restrictions as evidencing the clear intention of the grantors and their several grantees that the restrictions should also apply to all lots in the subdivision, including those lots which at the dates of such conveyances were still being retained by the original grantors, excepting only for lots #7 and 8 which were expressly excluded. They argue that the express exclusion of these two lots necessarily implies that the restrictions must have been intended to apply to all other lots, else the express exemption of lots #7 and 8 would not have been necessary. They contend this intention was further manifested by the use of the language in paragraphs one and three of the restrictions prohibiting building more than one residence on *"a* lot" as shown on the recorded plat, since if the parties had intended the restrictions to apply only to the lot being conveyed, the more appropriate reference would have been to *"the* lot being hereby conveyed."

[1, 2]   In summary, appellants' position is: First, that the intention to make the restrictions applicable to all lots on the recorded plat must necessarily be implied (a) from the fact that all deeds executed by the original owner developers for the seven lots sold by

them prior to the conveyances to plaintiff had in fact contained a restriction limiting use to residential purposes and (b) from a logical analysis of the language employed in the deeds by which six of these lots had been sold with uniform restrictions; and second, that since this intention is necessarily implied, the holding in *Reed v. Elmore, supra,* requires that the restrictions be enforced against plaintiff's lots. Even if the first portion of appellants' argument is logically warranted, we cannot accept the second. We do not so interpret *Reed v. Elmore, supra.* It should be noted that the majority opinion of the Court in that case cited both *Turner v. Glenn* and *Hege v. Sellers* and did not expressly overrule either. On the contrary, the Court took care to distinguish *Turner v. Glenn* by pointing out that in that case there had been no *express* covenant made by the common grantor as to the remainder of his property, whereas in *Reed* there had been a clear *express* application of the restriction to grantor's retained lot #4. While the majority opinion in *Reed* does undoubtedly modify the prior decisions in *Turner* and in *Hege,* as we understand the *Reed* decision it goes no further than to require a purchaser of real property in North Carolina to examine all recorded "out" conveyances made by prior record title holders during the periods when they respectively held title to the property, to determine if any such owner had *expressly* imposed a restriction upon the use of the property. If no restriction is imposed by clear and *express* language, the purchaser or his title examiner is not required to go further and to speculate at his peril as to whether imposition of some restriction is to be *implied,* either through processes of logical analysis of language employed, or from the fact that a large number of deeds containing uniform restrictions had been given, or from any combination of both.

If the developer of a real estate subdivision actually intends that all lots therein be restricted, it is simple enough for him to say so. If one of his grantees wants to invest in a restricted lot only if all then unsold lots are similarly restricted, he has but to insist that his grantor expressly say so in the deed by which he acquires title. He has no right to rely on the shaky grounds of implication.

> "Covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction to affect lands not specifically described, or to grant rights to persons in whose favor it is not clearly shown such restrictions are to apply. Doubt will be resolved in favor of the unrestricted use of property, so that where

the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land." 20 Am. Jur. 2d, Covenants, § 187, p. 755.

In the present case since there was no deed which expressly imposed any restriction on plaintiff's lots, the decision of the trial court was correct and is

Affirmed.

BRITT, J., concurs.

BROCK, J., dissenting:

The appealing defendants have no objection to a sanctuary and related buildings being constructed in the subdivision. Their concern is the destruction of the protection of the restrictive covenants on the remaining lots held by Mrs. Fox. Also they are concerned that if the restrictive covenants do not apply to the lots purchased by plaintiff, then plaintiff is free to reconvey the property for commercial or other purposes.

From an equitable point of view the plaintiff stands to lose nothing by having the restrictive covenants imposed upon its lots; it could have relief from Mrs. Fox upon her warranty of title. On the other hand the appealing defendants will lose the entire benefit of a residential development if the covenants are not imposed, and they have no redress against anyone.

Also it does not seem equitable for Mrs. Fox to lead the appealing defendants into purchasing these lots upon the promise of a restricted residential subdevelopment (and more than likely at inflated prices because of the restrictive covenants); then later convey lots to plaintiff without including the covenants in the deed; and then sit back as a nominal party defendant to watch plaintiff erase for her the restrictions she had imposed, thus releasing the remainder of her lots to be sold for whatever purpose she desires.

However, the case cannot be decided on the equities; it must be decided upon principles that will not unduly restrict free alienation and which can be uniformly applied to conveyances of real estate. For this purpose I agree with the majority that the opinion in *Reed v. Elmore,* 246 N.C. 221, 98 S.E. 2d 360, requires a purchaser of real property in North Carolina to examine all recorded "out" conveyances made by prior record title holders during the periods that they

respectively held title to the property, to determine if any such owner had expressly imposed a restriction upon the use of the property.

It is upon the question of whether there is an express imposition of restrictions that I disagree with the majority. Without engaging in a point by point argument with the reasoning by which the majority arrived at the conclusion that the deeds to the appealing defendants gave no specific notice of the application of the restrictive covenants to the remaining lots (except 7 and 8) in the subdivision, I will merely state that in my opinion the deeds to the appealing defendants do show an *express imposition* of the restrictive covenants on all the lots in the subdivision (except 7 and 8).

The majority opinion sets out portions of the restrictive covenants, but for a full understanding of the nature of the residential subdivision which the appealing defendants desire to protect it is helpful to view all of the restrictive covenants contained in the deeds from Mrs. Fox to the appealing defendants. Therefore they are set out in full below, with emphasis added at points which to me most clearly expressly impose the restrictions upon all of the lots in the subdivision (except 7 and 8).

"This property is sold subject to the following restrictions:

"1.  The property shall be used for residential purposes only, and *no buildings other than one residence,* except garages or outhouses for domestic purposes, *shall be built on a lot as shown in Plat Book 31, Page 27.*

"2.  No shop, store, factory, or place of public resort, or business house of any kind shall be erected, or suffered or licensed to exist on the property above-described and no hospital, asylum or institution of like or kindred nature shall be erected or suffered or licensed to exist on the property above-described.

"3.  That *not more than a one-family unit* shall be constructed *upon a lot,* and that *each dwelling* so constructed shall consist of a minimum of fifteen hundred (1500) square feet exterior measurement of contiguous enclosed living area.

"4.  No residence or building of any kind erected on the property shall be nearer the *front property line on any street* than thirty (30) feet, nor nearer than ten (10) feet of the side property lines *of a 'building lot'* provided this section shall not apply to garages and outhouses which are erected in the rear of the residence or dwelling.

"5.  That no privy shall be constructed or kept on the land

hereby conveyed, or no swine, chickens or cows shall be kept on the premises, and no nuisance of any kind shall be maintained or allowed thereon, nor use made thereof or permitted which shall be noxious or dangerous to health.

"6.   That no signs or billboards of any description shall be displayed on the property with the exception of signs 'For Rent' and 'For Sale', which signs shall not exceed 2 x 3 feet in size.

"7.   That *the above restrictive covenants shall not apply to lots 7 and 8 as shown on the plat referred to,* being recorded in Plat Book 31, at Page 27, in the office of the Register of Deeds of Durham County."

These deeds were recorded before plaintiff purchased its lots, therefore they constituted notice to plaintiff. *Reed v. Elmore, supra.* Furthermore, before its purchase, plaintiff, through its Senior Warden, had actual notice of the restrictive covenants in the deed to defendant Berry which are quoted above. Plaintiff consummated its purchase with all of the actual and constructive notice of these restrictive covenants that anyone could hope for.

I vote to reverse.