PEOPLES SERVICE DRUG STORES, INCORPORATED v. MAYFAIR, N.V. (MICORA, N.V.), KING INVESTORS, LTD. AND CONSOLIDATED THEATRES, INC.

No. 8017SC450

(Filed 3 February 1981)

**1. Evidence § 32.2; Landlord and Tenant § 6— expansion of theatre in shopping center — tenant's permission not required**

In an action to enjoin defendants from constructing an expansion of a theatre in the shopping center where plaintiff's store was located, the trial court did not err in refusing to consider testimony by plaintiff's representative and the original developer of the shopping center concerning the intent of the parties with respect to expansion or alteration of the shopping center and parking spaces, since the lease in question contemplated that in future expansions of the shopping center the landlord would maintain the established ratio of parking space to leasable area; the lease did not require the tenant's consent for future alterations; the oral evidence upon which plaintiff relied was to the effect that the tenant's consent was a prerequisite to any future expansion; and such evidence varied, added to or contradicted the written instrument and was therefore inadmissible under the parol evidence rule.

**2. Easements § 7.1— negative easement — parol evidence inadmissible**

In plaintiff's action to enjoin the expansion of a theatre in the shopping center where plaintiff leased a store, there was no merit to plaintiff's argument that the lease in conjunction with parol statements of the original parties thereto gave it an easement in the common areas of the shopping center and that as a result it had a veto power over future expansion, since the language in the lease by itself was insufficient to give plaintiff a negative easement in the common areas; a negative easement comes within the statute of frauds and cannot be proved by parol evidence; and the parol testimony of the original parties to the lease was therefore irrelevant to the determination of whether the lease granted plaintiff a *negative easement in the common areas of the shopping center.*

APPEAL by plaintiff from *Cornelius, Judge.* Judgment entered 11 February 1980 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 5 November 1980.

Plaintiff commenced this action in order to get a preliminary and permanent injunction enjoining defendants from constructing an expansion of the Kingsway Plaza Cinema. This theatre is located

in the Kingsway Plaza Shopping Center in Eden, North Carolina. It is adjacent to one of plaintiff's stores.

On 16 December 1971, a lease was entered into between Samuel M. Longiotti, d/b/a Plaza Associates of Eden, as landlord, and plaintiff as tenant. The lease was negotiated by Samuel M. Longiotti, the developer of the shopping center and landlord, and James M. Kane as representative of the tenant, plaintiff. The lease consisted of a form prepared by plaintiff. As a result of this instrument plaintiff leased from Kingsway Plaza and Mr. Longiotti its store in Kingsway Plaza Shopping Center. Incorporated into this lease by reference was a site plan of the proposed shopping center in which plaintiff's store was to be located. This site plan contained a legend in its lower right hand corner which stated:

> This plot plan shows only the approximate location of the demised premises in the project.

> Lessor reserves the right to change the names and location of other tenants, number of rooms, parking arrangements, entrances, service areas, etc. without tenants (sic) written approval, provided total area of project building area, parking area, or store frontage is not substantially altered.

At the time this agreement was executed, the legend on the site plan was scratched through and initialled by Mr. Longiotti and Mr. W. D. Paton, who represented plaintiff. A short form of this lease was recorded in the Office of the Register of Deeds of Rockingham County in Book 685, page 829.

Subsequently, the ownership of the shopping center passed though different hands. At the time of the proposed expansion of the theatre which is the subject of this lawsuit, defendant, Mayfair, N. V. (Micora, N.V.) was the owner of Kingsway Plaza Shopping Center, as it is presently. Defendant, King Investors, Ltd., leases and currently operates the shopping center. Defendant, Consolidated Theatres, Inc., leases and operates the Kingsway Plaza Cinema.

On 4 May 1979, defendant, King Investors, Ltd., notified plaintiff that defendants intended to construct a substantial addition to the Kingsway Plaza Cinema. The theatre would be increased by approximately 6,000 square feet to house three screens instead of

the single screen which it then housed.

In its complaint plaintiff alleged that the proposed expansion of the theatre was in direct breach of its lease. It claimed this was so for the reason that the expansion would alter the size, configuration, circulation, visibility and means of ingress and egress in the common areas of the shopping center as those common areas were shown upon the site plan which was incorporated in the lease. Plaintiff also claimed that the addition to the theatre, which would protrude into the parking area close by plaintiff's store, would reduce the ratio of parking space to leasable area. An acceptable parking ratio was specified in plaintiff's lease.

The proposed expansion of the theatre would reduce the number of designated spaces in the shopping center by 34. However, as part of the expansion project the landlord proposed to create 95 new designated parking spaces. These would replace the 34 spaces taken, while adding 61 new ones to the total. Some of the new parking spaces would be in front of the shopping center, but the majority of the spaces would be to the side and rear of the shopping center. At the time the expansion idea arose there were no designated parking spaces to the rear of the stores in the shopping center. This area had been used primarily for the loading and unloading of freight.

Mr. James M. Kane and Mr. Longiotti were witnesses at the trial of this matter. These two men were the chief negotiators of the terms of the lease in question. Mr. Kane was plaintiff's real estate manager and as such represented plaintiff in these negotiations. Mr. Kane testified that at the time the lease was negotiated, it was his understanding that the site plan was to be part of the lease. He testified with regard to his intention in striking the legend from the site plan:

> My discussion with Mr. Longiotti concerning striking the legend was that it was going to be a deal breaker. If we could not have control over the area, we would not sign the lease. Due to our further distance from the grocery store and the unusual location to the other locations in the center, plus the parcels that were out in the direct front and to the side of our store, large land parcels, one two hundred by two hundred and the other a hundred by a hundred, and we had no control over that marked land of

others, and we wanted to make sure that the limited parking in front of our store would be reserved or unhindered in the future and serve us well as retail tenants.

Likewise, Mr. Longiotti testifed that it was his understanding that the lease was executed subject to the fact that the legend was deleted from the site plan. He intended with the striking of the legend that no further changes would be made in the site plan, nor that any expansion other than that which had already been negotiated would occur without plaintiff's approval. He stated that this particular agreement was bargained for. By striking the legend from the site plan, he intended to surrender his right as landlord to change the name or location of the other tenants, the parking arrangements, entrances, service areas, or exits without the plaintiff's written approval.

The court heard this matter without jury and the findings of fact appearing in its judgment ignored the testimony of both witnesses, Mr. Kane and Mr. Longiotti, as to their intentions in striking the legend from the site plan when executing the lease. The court did cite the last paragraph of paragraph 21 of the lease which reads as follows:

In the event of future development or expansion of the Shopping Center, Landlord agrees that it will maintain the same ratio of parking space to leasable area as is provided herein.

Based upon its findings of fact the court concluded that the lease embodied all of the agreements between the parties with respect to the leased premises; defendant had the right under the lease to expand the shopping center; and the proposed expansion of the theatre and parking area met the requirements and did not violate the terms of the lease. Consequently, the court denied plaintiff's request for a permanent injunction of the construction.

*Hudson, Petree, Stockton, Stockton and Robinson, by Dudley Humphrey and Jackson N. Steele, for plaintiff appellant.*

*Midgette, Page and Higgins, by Keith D. Lembo, for defendant appellees Mayfair N. V. (Micora, N.V.) and King Investors, Ltd.*

*Berry, Bledsoe, Hogewood and Edwards, by Mark B. Edwards and John V. McIntosh for defendant appellees Consolidated Thea-*

*tres, Incorporated.*

MORRIS, Chief Judge.

Initially, we note that plaintiff's assignments of error, which are noted in the record, fail to call to the court's attention portions of the record that form the basis of its contentions. Rule 10(c), N. C. Rules App. Proc., requires that all assignments of error should be followed by a listing of the exceptions on which they are based, and that these exceptions should be identified by the pages of the record at which they appear. Exceptions not listed properly should be deemed abandoned. No exceptions appear in the body of this record. Furthermore, only plaintiff's first assignment of error contains an exception with a page reference. We are aware that the plaintiff's assignments of error, except the first, refer to findings of fact which plaintiff contends the court erroneously failed to make. However, plaintiff should have excepted to the court's findings of fact and placed those which it contends the court should have found in the record. As the record stands, there is nothing contained therein to call our notice to plaintiff's contentions.

Under the authority of Rule 2, N. C. Rules of App. Proc., we may suspend the requirements of the Rules of Appellate Procedure to prevent manifest injustice to a party, or to expedite decision in the public interest. We deem it appropriate to so suspend the rules in this instance. By doing so we do not intend to encourage in the bar a laxity in compliance with the Rules of Appellate Procedure.

[1] Plaintiff maintains that there was uncontradicted evidence before the court which conclusively established that by striking out the legend on the site plan contemporaneously with the execution of the lease, the landlord, Mr. Longiotti, intended to grant to plaintiff the unrestricted right to approve or disapprove of any expansion of the shopping center. This would apply particularly to any expansion into the common areas as shown by the site plan. Plaintiff contends that the court was obligated to find these facts because of the testimony of Mr. Kane and Mr. Longiotti as to their intent when entering into this agreement, as evidenced by their deletion of the site plan.

Apparently, the trial court's reason for excluding the evidence of the intent of the parties to the lease from its findings of fact was that it concluded that the lease embodied all of the agreements

between the parties with respect to the premises.

Plaintiff contends that the lease and site plan contain ambiguities as to its rights with respect to future expansion. Therefore, the court should have considered the evidence of the parties' intent and found facts consistent with that evidence. Plaintiff argues that this evidence conclusively establishes the rights of the parties to the lease which are in controversy. Plaintiff asserts that the court erred by not making findings of fact based on the parol evidence. Therefore, the court's conclusions of law should be reversed.

North Carolina adheres to the parol evidence rule. This rule encourages stability in written contracts. The parol evidence rule is applicable to leases in much the same manner as it is to contracts. *See Stewart v. Thrower*, 212 N.C. 541, 193 S.E. 701 (1937); *Furniture Leasing v. Horne*, 29 N.C. App. 400, 224 S.E. 2d 305 (1976). In general, the parol evidence rule prohibits the admission of evidence to vary, add to, or contradict a written instrument. *See Robbins v. Trading Post*, 253 N.C. 474, 117 S.E. 2d 438 (1960); *Gas Co. v. Day*, 249 N.C. 482, 106 S.E. 2d 678 (1959). Plaintiff contends that in spite of the parol evidence rule the oral evidence of the parties' intentions should have been considered by the court in this instance, because the written lease was ambiguous as to the rights of the parties with regard to the pertinent issue.

> [W]here the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, *it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing.* Accordingly, all prior and contemporaneous negotiations in respect to these elements are deemed merged in the written agreement. And the rule is that, in the absence of fraud or mistake or allegations thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent. (Citations omitted and emphasis added.)

*Neal v. Marrone*, 239 N.C.73, 77, 79 S.E. 2d 239, 242 (1953).

We do not think there is any ambiguity in this lease, with regard to the issue of whether the landlord must get plaintiff's

consent to alter the configuration of the parking lot in order to accommodate the proposed theatre expansion. The last two paragraphs of paragraph 21 of plaintiff's form lease state:

> Landlord agrees and covenants that during the term of this lease it will retain the size of, and (at its expense) maintain in good order and repair, and free from ice, snow and debris, the common areas (parking areas, service areas, sidewalks, circulation areas, and means of ingress and egress) in the Shopping Center, as shown on Exhibit A, and will provide adequate lighting (including the electricity therefor) for said common areas.

> In the event of future development or expansion of the Shopping Center, Landlord agrees that it will maintain the same ratio of parking space to leasable area as is provided herein.

The plain import of these passages is that the landlord may alter the configuration of the parking areas of the shopping center, but in so doing it must maintain the original "size" of the parking lot. It must retain the "size" of the parking areas by maintaining the proper ratio of parking space to leasable area. The lease is silent with regard to whether the landlord must have the plaintiff's consent before making any changes. Therefore, such consent is not a prerequisite to alterations the landlord might make in the common areas. The landlord did not agree to retain the shape or configuration of the parking areas, but only their "size." The second paragraph of the quoted terms contemplates the future expansion of the shopping center, but it only requires that the landlord maintain the proper parking ratio in making the changes. Plaintiff drafted this form lease, and had it wanted to possess the power to consent to future alterations in the parking areas it could have included such a power in the lease.

Furthermore, the lease contains a merger clause. Paragraph 30 section (g) states:

> This instrument embodies all the agreements between the parties hereto in respect to the premises hereby leased, and no oral agreements or written correspondence shall be held to affect the provisions hereof. All subsequent changes and modifications to be valid shall be by written instrument executed by Landlord and

Drug Stores v. Mayfair

Tenant.

This clause is evidence of the intention of the parties to the lease that it constitute their entire agreement, and that conflicting oral agreements should not be allowed to vary its terms.

Fortunately, the court heard the testimony of Mr. Kane and Mr. Longiotti so that all of the oral evidence which plaintiff proposes to offer as the basis for its additional findings of fact is known. This evidence does vary, add to, or contradict the written instrument. The lease contemplates that in future expansions of the shopping center the landlord will maintain the established parking ratio. It says nothing about getting the tenant's consent for future alterations. The oral evidence which plaintiff relies upon is to the effect that the tenant's consent is a prerequisite to any future expansion. Therefore, we hold that the court did not err in disregarding the oral evidence of the intentions of the original parties to the lease. Consequently, the court's failure to find the facts as proposed by plaintiff was not error.

[2] Additionally, plaintiff argues that paragraph 21 of the lease in conjunction with the parol statements of the original parties thereto gives it an easement in the common areas of the shopping center. As a result, it has a veto power over future expansion. Plaintiff cites no North Carolina authority for this proposition. The lease simply states that, "Landlord agrees and covenants . . . it will retain the size of . . . the common areas (parking areas, service areas, sidewalks, circulation areas, and means of ingress and egress) in the Shopping Center, as shown on Exhibit A . . ." This language by itself is insufficient to give plaintiff a negative easement in the common areas. The language merely indicates that the landlord agreed to maintain the "size" of the common areas. The major part of plaintiff's argument rests on the oral statements of Mr. Longiotti as to the parties' intentions.

In North Carolina a negative easement comes within the statute of frauds, and it cannot be proved by parol evidence. *Hege v. Sellers*, 241 N. C. 240, 84 S.E. 2d 892 (1954); *Davis v. Robinson*, 189 N.C. 589, 127 S.E. 697 (1925); *Simmons v. Morton*, 1 N.C. App. 308, 161 S.E. 2d 222 (1968). Therefore, in the instant case the parol testimony of the original parties to the lease is irrelevant to the determination of whether the lease granted plaintiff a negative easement in the common areas of the shopping center. The lease by

itself does not give plaintiff a negative easement in the common areas of the shopping center.

The proposed theatre expansion and additions to the parking lot are not in violation of the terms of this lease. Defendant proposes to maintain the size of the parking lot in conformity with the provisions of the lease.

The judgment of the trial court is

Affirmed.

Judges WEBB and MARTIN (Harry C.) concur.