B. M. LEWIS ET AL. V. IDA MAY ET AL.

(Filed 7 March, 1917.)

**1. Contracts—Written—Interpretation—Intent.**

The courts will consider a written contract as a whole, where the writing admits of interpretation, in order to arrive at the intent of the parties, and will give every part thereof its legitimate effect.

**2. Same—Drainage Districts—Petitioner—"Dismissed."**

Where in view of establishing a drainage district under the statute, the petitioners enter into a written contract with a surveyor, for his services required thereunder, that he should be paid "out of the first proceeds from the sale of drainage bonds," but that should the action to establish the district be "dismissed," a certain less sum should be paid out of the funds of the petitioners, and the proceedings are regularly prosecuted, but dismissed by the clerk, from which no appeal was

taken: *Held*, the use of the word "dismissed," without qualification, includes within its intent the dismissal thereof by the clerk; and the amount stipulated in that event only is recoverable against the petitioners and the sureties on their bond.

### 3. Appeal and Error—Reference—Findings.

Findings of fact by the referee, approved by the judge, upon supporting evidence, are not reviewable on appeal, expecially in this case, where the parties have agreed that they should be conclusive.

### 4. Judgments—Collateral Attack—Contracts—Drainage Districts.

Where the liability of petitioners to lay off a drainage district depends, according to their contract with the defendants, upon the "dismissal" of the proceedings, and it appears that the proceedings were regularly had in conformity with the statute and dismissed by the clerk, from whose judgment no appeal was taken, the judgment of the clerk cannot be collaterally attacked in an action against the petitioners upon the contract.

SPECIAL PROCEEDING, heard by *Whedbee, J.,* upon the report of Junius D. Grimes, Esq., referee, at May Term, 1916, of PITT.

The proceeding was brought for the purpose of establishing a drainage district, and on 7 April, 1914, a petition was filed before the clerk for the establishment of such a district along Little Contentnea Creek. On 13 July, 1914, a petition was filed by certain landowners asking that additional territory along Middle Swamp be added, and on 2 July, 1914, a petition was filed asking that additional territory along Sandy Run be included. Process has been duly served on all the defendants. At the hearing of the original petition, 12 May, 1914, an order was entered appointing viewers, among whom was A. S. Goss, a civil engineer and drainage engineer. A like order was entered upon the filing of the petitions for the inclusion of additional territory. From time to time the viewers filed requests for extensions of time under the statute, and finally the preliminary report was filed, as to the whole territory described in the various petitions, on 22 August, 1914, and proper orders were made for a hearing thereon, proper notices given, and affidavits made as to the giving of the notices; protests of various parties were heard, and on 12 September, 1914, the date fixed therefor, the preliminary report was heard and passed on by the clerk, and after finding the facts as required by the statute, Pitt County Drainage District, No. 1, was established, and under another order, entered on the same date, the preliminary report was referred back to the board of viewers to make to the court a complete report, maps or surveys, plans, specifications, etc., on or before 12 October, 1914. The record will disclose that the proceedings were correctly and properly conducted, and in accordance with the statute.

On 12 October, 1914, the final report of the board of viewers was filed in accordance with the statute, and attached thereto were a schedule of the landowners, acreage, classifications, etc., and maps and profiles, as required by the statute. Objections were filed by persons included in the district, and heard, as appears from the record, none of which however, has anything to do with this controversy. The hearing of the final report was continued from time to time by regular order entered in the cause, all of which appear in the record, until 26 January, 1915, when a final judgment was entered in the case, dismissing the same.

Thereafter the Brett Engineering and Contracting Company, as assignee of A. S. Goss, filed their claim before the clerk of the court for the sum of $3,350 for services, and moved that the petitioners and their bondsmen be taxed with said amount. To this motion the petitioners filed an answer, and the clerk of the court, on 30 April, 1915, signed a judgment denying the motion and dismissing same, to which the Brett Engineering and Contracting Company excepted and appealed.

At the August Term, 1915, of the Superior Court, *Judge Bond* presiding, upon motion of the Brett Engineering and Contracting Company, the judgment of the clerk, upon the motion of the Engineering Company, was reversed, and all matters in controversy referred to J. D. Grimes, this reference being ordered on motion of said company Mr. Grimes heard the matter, returned his report, stating his findings of fact and conclusion of law, which was confirmed by *Judge Whedbee* at May Term, 1916, of the Superior Court, after overruling exceptions to said report filed by the Brett Engineering and Contracting Company.

As the decision of the case turns upon the construction of the contract between the Brett Engineering Company and B. M. Lewis and McD. Horton, and a similar contract between that company and R. L. Davis, it will be necessary to a proper understanding of the matter that one of those contracts, with identical terms, be set forth, as follows: "For that portion of the Pitt County Drainage District lying along little Contentnea Creek and extending from about Beaver Dam Hole to about Adams Bridge, we propose to act as engineer, make all necessary surveys, prepare plans, estimates, etc., for the sum of $1,500; this $1,500 to be paid out of the first proceeds from the sale. In case the action to establish the drainage district is dismissed by the clerk of the court, our fee for the services rendered up to and including the preliminary report will be $400, to be paid in cash out of the bond of the petitioners within thirty days after dismissal by the court."

The proposal of the engineering company was accepted by the

parties; B. M. Lewis and McD. Horton, and constitutes their contract, and the other proposal was likewise accepted by R. L. Davis, and this forms his contract. The reference was ordered at the request of the Brett Engineering Company, with the consent of the other parties, and provides that the findings of fact shall be conclusive.

The court entered judgment, upon the referee's report, against the plaintiffs and their sureties for the sums set forth therein, and the Brett Engineering Company, claiming that it is entitled to a larger amount under its contracts, appealed to this Court.

*F. G. James & Son for plaintiff.*
*H. G. Connor, Jr., and Skinner & Cooper for defendant.*

WALKER, J., after stating the case: The decisive question in this case is, what is the meaning of the contract? The object of all rules of interpretation is to arrive at the intention of the parties, and where the terms of the agreement have been reduced to writing, so that there is no dispute as to what they are, and they are so framed as to admit of construction, the intent must be gathered from a consideration of the entire instrument, the problem being, not what any part of the contract taken separately may mean, but what is the meaning of the contract when every part is given its legitimate effect. *R. R. v. R. R.,* 147 N. C., 382; *Simmons v. Groom,* 167 N. C., 271; *Spencer v. Jones,* 168 N. C., 291. We think that there is but one meaning to be deduced from the words of this contract, which is, that it was intended to provide for two contingencies. The first was that the proceeding should be conducted to its end, as contemplated by the statute, so that the drainage district would be fully established and the proceeding terminated in a final adjudication, or decree of confirmation, upon which depended the issuance of the bonds. If this event occurred, the engineering company should receive $1,500 for its services, under the Lewis and Horton contract, and $900 and $700 under the R. L. Davis contract. The second contingency was that the proceeding might stop short of a final decree, by a dismissal, in which event it was provided that petitioners and their sureties would be bound to pay the sum of $400 (or $250 by the other contract), within the time specified, for services rendered up to and including the preliminary report. The engineering company assumed the risk of the proceeding being stopped before reaching its final stage, when the bonds would be issued. It seems evidently to have been the purpose that the $1,500 and $900 should be paid out of "the first proceeds from the sale of drainage bonds," and not by the petitioners. The learned counsel who argued the case so well in this court for the engineering company suggested that the requirement that the first payment should come out of the bonds is not conclusive as

to the intent, and this may be so, and we are so treating it, but it is the strongest kind of evidence as to what was the true meaning of the parties. The proposal was that the company, or its assignor, would do the whole work for the specified amount and rely for compensation on the proceeds of the sale of bonds, and this offer was accepted by the petitioners. This part of the contract was clearly intended to exclude the idea of any personal responsibility of the petitioners for so large an amount, and there was no good reason why they should assume it. If the event upon the happening of which it was provided that the money should be paid and in a particular way had taken place, the money would have been paid out of the fund designated for that purpose. But it failed to occur, because the proceedings were dismissed, and the other event had happened, which fixed the liability of the petitioners at the smaller sums, or $400 and $250. If the enterprise succeeded throughout as designated at the beginning of it, the district would take the burden of paying for the work out of its bonds, but if it failed, by reason of a dismissal and before the final conclusion of the matter, the petitioners thought it fair, as there was no other way of payment, that they should undertake to pay for the preliminary work; and this is all of their obligation, in this view of the case. Whether the petitioners were liable for the reasonable value of the services performed after the preliminary report was filed, we need not decide, as the company has received a judgment upon the theory that it was so entitled to recover, and the petitioners have not appealed.

The terms of the contract are broadly stated, viz.: "In case the action to establish the drainage district is dismissed by the clerk of the court, the $400 (and $250 in the second contract) should be paid out of the fund of the petitioners." While in the other, or first event named, the $1,500 (and $900 in the other contract) should be paid "out of the first proceeds from the sale of drainage bonds." When we compare, or contrast, the two classes, it appears clearly, we think, that the method of payment was intended to indicate who should be liable for the different amounts. The use of the word "dismissed," without qualification, and in a general sense, shows that dismissal of any kind was intended. In other words, if the proceedings failed of their purpose, and were dismissed for any cause, the petitioners should pay $400 and $250, and their bondsmen should be liable with them. The proceedings were dismissed, and there has been no reversal of that judgment. If it was erroneous in law, it could be attacked only by an appeal, and, if irregularly entered, by a motion to set it aside. It is not contended that it was void, so that it can be assailed collaterally. When the clerk denied the motion of the engineering company to tax petitioners and their sureties with the amount of their claim ($3,350), his judgment was reversed,

and the order of reference made. This had nothing to do with the prior dsimissal of the proceedings, but supervened, and was based upon the judgment of dismissal.

The appellant has excepted to the referee's finding of fact, but they have been approved and confirmed by the judge upon evidence, and we do not in such case review the finding. *Cooper v. Middleton,* 94 N. C., 86; *Harris v. Smith,* 144 N. C., 440; *McCullers v. Cheatham,* 163 N. C., 63. Besides, the order of reference was by consent and at appellant's request, and it was stated therein that the findings of fact should be conclusive.

In discussing the case, we have not referred specifically to the contract for the drainage of District No. 1 along Middle Swamp, but the contracts are all alike in substance, and we selected the two contracts first mentioned in the case. The same reasoning extends to all of them, and our conclusion as to each is, therefore, the same.

There are numerous exceptions and assignments of error, but we need not refer to any but those already considered. The main question in the case involves the construction of the contract, and a decision as to this sufficiently covers the case. We have kept within the limits of the appellant's brief, as we are required to do by the rule of this court. The statutes relating to the subject of drainage have been kept constantly in view, but we do not think that any of their provisions should induce us to give a different meaning to the contract.

Affirmed.