C. K. CALLAHAM AND WIFE, ANNA H. CALLAHAM, v. HERMAN G. AREN-SON AND WIFE, SARA Z. ARENSON; MAURICE W. STONE AND WIFE, EVELYN P. STONE; C. D. HARRIS AND WIFE, PAULINE D. HARRIS; HAROLD A. SMOAK AND WIFE, ANNIE F. SMOAK; F. M. BOLDRIDGE AND WIFE, ELIZABETH B. BOLDRIDGE; MYRTLE FRYE WELLONS; M. B. POUNCEY AND WIFE, ELLER M. POUNCEY; H. C. DOCKERY, TRUSTEE; CHARLES J. HENDERSON, TRUSTEE; J. M. SCARBOROUGH, TRUSTEE; J. N. MILLS, TRUSTEE; NEW YORK LIFE INSURANCE COM-PANY, FIRST FEDERAL SAVINGS LOAN ASSOCIATION, UNION NATIONAL BANK OF CHARLOTTE, AND EQUITABLE LIFE ASSUR-ANCE SOCIETY.

(Filed 17 March, 1954.)

1. Deeds § 16b—

In construing restrictive covenants in a deed, the meaning of each pro-vision must be determined from a consideration of and in relation to the other provisions of the instrument, giving each part its effect according to the natural meaning of its language.

**2. Same—**

In construing restrictive covenants, each part of the contract must be given effect if this can be done by fair and reasonable intendment, before one clause may be construed as repugnant to or irreconcilable with another clause.

**3. Same—**

Restrictive covenants must be strictly construed against limitation on use, and be given effect as written, without enlargement by implication or construction.

**4. Same—**

Mere sale of lots by reference to a recorded map raises no implied covenant as to size of lots or against further subdivision.

**5. Same—**

Ordinarily, the creation of streets or rights of way for better enjoyment of residential property does not in itself violate a covenant restricting the property to residential purposes.

**6. Same—**

Plaintiff purchased four lots in a subdivision subject to restrictions limiting the use of the lots to residential purposes and stipulating the minimum frontage and size of each lot. *Held:* Plaintiff is entitled to re-subdivide his lots for residential purposes by opening a street between two lots along the depth, provided the lots facing such street meet the requirements of the restrictions as to minimum frontage along the street and size.

**7. Same: Easements § ½—**

Restrictive covenants are negative easements in land which ordinarily cannot be created by parol.

**8. Deeds § 16b: Estoppel § 6a—**

The mere fact that the purchaser of lots subject to restrictive covenants is advised by the grantors at the time of his purchase that only one residence was to be built on each of the lots will not estop the purchaser from subdividing his lots in such manner as not to violate the restrictions as to the use of the lots or their size and frontage.

**9. Appeal and Error § 39e—**

Where evidence excluded is insufficient to alter the rights of the parties as a matter of law, the exclusion of the evidence cannot be harmful.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Pless, J.,* and a jury, at 2 March, 1953, Regular Civil Term of MECKLENBURG.

Civil action to remove alleged cloud upon title to real estate.

These in substance are the essential undisputed facts disclosed by the pleadings, stipulations, and evidence:

1. On 27 March, 1941, the defendants F. M. Boldridge and wife, Elizabeth B. Boldridge, being the owners of all the lots shown on the

accompanying map, designated as Exhibit B, copy of which is duly regis-
tered in the Public Registry of Mecklenburg County, executed a contract
for the purpose of imposing certain restrictions on the use of the lots
shown on the map. The contract, registered in the Public Registry of
Mecklenburg County in Book 1043, page 528, is in pertinent part as
follows:

"KNOW ALL MEN BY THESE PRESENTS that the undersigned F. M.
Boldridge and wife, Elizabeth B. Boldridge, do hereby covenant and agree
to and with all persons, firms or corporations now owning or hereafter
acquiring any property or lots shown upon a map of part of the property
of F. M. Boldridge and wife, which is recorded in the office of the Register
of Deeds for Mecklenburg County in Book of Maps 4, page 427, are
hereby subjected to the following restrictions as to the use thereof run-
ning with said property by whomsoever owned, to wit:

"A. All lots in the tract shall be known and described as residential
lots. No structure shall be erected, altered, placed or permitted to remain
on any residential building plot other than one detached single family
dwelling not to exceed 2½ stories in height and a private garage for not
more than three cars and other outbuildings incidental to residential
use of the plot.

"B. No building shall be located on any residential building plot
nearer to the front lot line than the following:

> On Lot No.  1 not nearer than   80 feet
> On Lot No.  2 not nearer than   90 feet
> On Lot No.  3 not nearer than  100 feet
> On Lot No.  4 not nearer than  100 feet
> On Lot No.  5 not nearer than  100 feet
> On Lot No.  6 not nearer than  100 feet
> On Lot No.  7 not nearer than  100 feet
> On Lot No.  8 not nearer than   90 feet
> On Lot No.  9 not nearer than   80 feet
> On Lot No. 10 not nearer than   70 feet
> On Lot No. 11 not nearer than   60 feet.

No building shall be located on any lot nearer than 7½ feet to any side
lot line except on Lot No. 11 on which no building shall be erected nearer
than 5 feet to either side lot line.

"C. No residential structure shall be erected or placed on any building
plot, which plot has an area of less than 20,000 square feet nor a width
of less than 100 feet at the front building set-back line, except that a resi-
dence may be erected or placed on Lot 11 as shown on the recorded plat.

CALLAHAM *v.* ARENSON.

(EXHIBIT "B")
PROPERTY OF
E. M. BOLDRIDGE
SHARON TOWNSHIP
MECKLENBURG COUNTY, N.C.
Scale 1"= 60'
March 1940
By J. W. Sorrill
County Surveyor

See Recorded Map Book 4 Page 427
Restricted 1043 Page 528

"G. No dwelling costing less than $5,500 shall be permitted on any lot in the tract. The ground floor area of the main structure, exclusive of one story open porches and garages, shall be not less than 1200 square feet in the case of a one story structure nor less than 900 square feet in the case of a 1½, 2, 2½ story structure.

"H. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1988, at which time said covenants shall be automatically extended for successive periods of ten years unless by vote of a majority of the then owners of the lots it is agreed to change said covenants in whole or in part."

2. That by deed dated 10 August, 1951, and duly registered in the Public Registry of Mecklenburg County, the defendants F. M. Boldridge and wife sold and conveyed to the plaintiffs lots 6, 7, 8, and 9 of the Boldridge property, with total frontage of 375 feet on Selwyn Avenue, as shown on Exhibit B, the triangular strip 25 feet wide on Selwyn Avenue next to Lot No. 5 having been reserved by the defendants Boldridge; that the deed conveys the four lots to the plaintiffs subject to restrictive covenants stipulated in the prior registered contract executed by F. M. Boldridge and wife 27 March, 1941.

3. That the rest of the lots shown on Exhibit B, namely, Lots 1, 2, 3, 4, 5, 10, and 11, are owned, respectively, by the defendants Arenson, Stone, Harris, Smoak, Boldridge, Wellons, and Pouncey, with the corporate defendants holding liens on four of these lots.

4. The plaintiffs propose and intend to locate a 50-foot street or roadway along the line between lots 7 and 8 and to resubdivide their four lots from a point not less than 150 feet back from Selwyn Avenue, so as to establish two rows of new lots to front on the 50-foot street, with each lot having an area of not less than 20,000 square feet and a width of not less than 100 feet at the front building set-back line; that after the proposed resubdivision, each of the lots fronting on Selwyn Avenue would have an area of not less than 20,000 square feet and a width at the front building set-back line of not less than 100 feet; "and it . . . is the further plan and purpose of the plaintiffs to cause not more than one dwelling to be erected on each of the lots as resubdivided (and) to sell such resubdivided lots by deeds containing such warranty clause as would permit erection of not more than one detached single-family dwelling not to exceed 2½ stories in height and a private garage for not more than three cars and the other out-buildings incidental to residential use of each resubdivided lot, any dwelling to cost not less than $5,500.00 and to have a ground floor area as to the main structure, exclusive of one story open porches and garages, of not less than 1200 square feet in the case of a one-story structure, nor less than 900 square feet in the case of a one-and-one-half, two and two-and-one-half story structure."

The plaintiffs bring this action, alleging in gist that the restrictive covenants stipulated in the defendants' contract of 27 March, 1941, subject to which the plaintiffs hold title, are not legally sufficient to prevent the plaintiffs from redeveloping their property and putting it to use in accordance with their proposed plan.

The plaintiffs further allege that the defendants claim a present right to restrain the plaintiffs from carrying out the foregoing plan on the ground it would be violative of the provisions of the restrictive covenants, subject to which admittedly all the lots in the subdivision are held, and that such claim on the part of the defendants constitutes a cloud upon the title to the plaintiffs' four lots which they pray the court to remove.

The defendants, answering, admit they claim the right to restrain the plaintiffs from going forward with their proposed project. They further allege that the covenants contained in the Boldridge restrictive covenant contract are legally sufficient to prevent the plaintiffs from carrying out the proposed redevelopment project. The defendants also allege by way of affirmative defense and estoppel that in the negotiations for the purchase of the lots the male plaintiff was advised by F. M. Boldridge that the area was restricted and that "only one residence was to be built on each of the lots" as shown on the map; and that the male plaintiff, wrongfully concealing his plan of redevelopment, represented to the defendant Boldridge that he would comply with the terms of the restrictions as related by Boldridge, and thereby effectuated the purchase of the property.

At the trial below, the plaintiffs offered evidence showing all the details of their proposed plan of redevelopment of lots 6, 7, 8, and 9. Following this, the defendants offered evidence in respect to the topography, grade, elevation, and general physical surroundings of the property in the Boldridge subdivision. However, all evidence proffered by the defendants in support of their plea of estoppel was excluded from consideration by the jury. It is brought forward in the record in support of the defendants' exceptions.

At the close of the evidence the court submitted the case to the jury under a peremptory instruction in favor of the plaintiffs on this issue: "Does the proposed development of the plaintiffs' property constitute a violation of the restrictions affecting the same?" The jury answered the issue "No."

Thereupon, the court entered judgment in accordance with the verdict, decreeing that the plaintiffs may resubdivide and dispose of the four lots in accordance with their plan as outlined in the complaint.

From the judgment so entered, the defendants appealed, assigning errors.

*Brock Barkley for plaintiffs, appellees.*

*B. F. Wellons and J. A. McRae for defendants, appellants.*

JOHNSON, J.   Decision here turns on whether or not the plaintiffs' proposed plan for resubdividing their four lots into smaller units violates the restrictive covenant contract made by the original developers of this property, the defendants Boldridge.

The applicable rules of interpretation require that the meaning of the contract be gathered from a study and a consideration of all the covenants contained in the instrument and not from detached portions. *Lewis v. May,* 173 N.C. 100, 91 S.E. 691.   See also *Strigas v. Insurance Co.,* 236 N.C. 734, 73 S.E. 2d 788; *Indemnity Co. v. Hood,* 226 N.C. 706, 40 S.E. 2d 198.   It is necessary that every essential part of the contract be considered—each in its proper relation to the others—in order to determine the meaning of each part as well as of the whole, and each part must be given effect according to the natural meaning of the words used. *Electric Supply Co. v. Burgess,* 223 N.C. 97, 25 S.E. 2d 390.

Another fundamental rule of construction applicable here requires that each part of the contract must be given effect, if that can be done by fair and reasonable intendment, before one clause may be construed as repugnant to or irreconcilable with another clause. *Electric Supply Co. v. Burgess, supra.*

Further, it is to be noted that we adhere to the rule that since these restrictive servitudes are in derogation of the free and unfettered use of land, covenants and agreements imposing them are to be strictly construed against limitation on use. *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620.   Therefore, restrictive covenants clearly expressed may not be enlarged by implication or extended by construction.   They must be given effect and enforced as written.   14 Am. Jur., Covenants, Conditions and Restrictions, Sections 211 and 212; Annotations: 175 A.L.R. 1191; 26 C.J.S., Deeds, Section 163.

Moreover, the rule is that the mere sale of lots by reference to a recorded map raises no implied covenant as to size or against further subdivision. *Sedberry v. Parsons,* 232 N.C. 707, 62 S.E. 2d 88; *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197; *Stephens Company v. Binder,* 198 N.C. 295, 151 S.E. 639; 14 Am. Jur., Covenants, Conditions and Restrictions, Section 201; Annotation: 57 A.L.R. 764.

And ordinarily the opening and maintenance of a street or a right of way for the better enjoyment of residential property as such does not violate a covenant restricting the property to residential purposes. *Raleigh Port Corp. v. Faucett,* 140 Va. 126, 124 S.E. 433; *Mairs v. Stevens,* 51 N.Y.S. 2d 286, 62 N.E. 2d 238; Annotations: 25 A.L.R. 2d 904; 175 A.L.R. 1191, 1207; 14 Am. Jur., Covenants, Conditions and Restrictions, Section 255.

The covenants that control decision here are contained in three paragraphs of the contract.   Paragraph "A" restricts the use of the property

to residential purposes, and provides that not more than one dwelling unit shall be placed on "any residential building plot." Paragraph "B" establishes the minimum building set-back lines, both front and side. Whereas paragraph "C" fixes the minimum size of the building lots. The minimum requirements as to size are governed by two prescribed standards— one as to width, the other as to total area. The minimum width is 100 feet at the front building set-back line; whereas the minimum area is 20,000 square feet. Therefore a lot 100 feet wide and 200 feet deep meets minimum standards fixed by paragraph "C" as to size. It is noted that all the lots from 1 to 10, inclusive, shown on the map of the original subdivision contain areas largely in excess of 20,000 square feet, yet none of these lots is less than the minimum width of 100 feet. Necessarily, then, the covenant fixing minimum standards as to width and area authorizes resubdivision of the original lots into units as small as 200 feet in depth.

The plaintiffs' proposed plan of dividing their lots into smaller units comes within the terms of the covenant which prescribes minimum lot areas. Each of the proposed nine lots has an area of at least 20,000 square feet. Each is at least 100 feet wide at the front. Plaintiffs' proposed plan also meets the requirements as to building set-back distances, both front and side. In short, the plaintiffs' plan conforms with all requirements set out in the Boldridge restrictive covenant contract.

The three controlling paragraphs of the contract, when considered each in its proper relation to the others, harmonize and reflect an over-all meaning which is free of inconsistency or repugnancy. See *Hickson v. Noroton Manor,* 118 Conn. 180, 171 A. 31. The plaintiffs' proposed plan of resubdivision when interpreted in the light of the applicable rules of law comes within the terms of the restrictive covenants under review. As parties bind themselves so must the courts leave them bound.

The case of *Starmount Co. v. Memorial Park, Inc.,* 233 N.C. 613, 65 S.E. 2d 134, cited and relied on by the defendants, is factually distinguishable.

The defendants' exceptions relating to the exclusion of evidence proffered in support of the plea of estoppel are without merit. A building restriction is a negative easement in land and cannot be created by parol. *Turner v. Glenn, supra* (220 N. C. 620); *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697. True, in proper cases an estoppel predicated upon grounds of silence or fraud may override the statute of frauds. 19 Am. Jur., Estoppel, Section 92: Annotation: 50 A.L.R. 668, 685. But in the instant case the defendants' proffered evidence is wholly insufficient to justify relief on the ground of estoppel. Therefore, if the evidence proffered and refused had been received, the conclusion here reached would not have been changed. So, in law no harm has come to the defendants

from the exclusion of the evidence. *Pate v. Duke University,* 215 N.C. 57, 1 S.E. 2d 127. Other exceptions not discussed are overruled.

The verdict and judgment will be upheld.

No error.

BOBBITT, J., took no part in the consideration or decision of this case.