393 So.2d 1333 (1981)
A.A. HOME IMPROVEMENT CO., INC.
v.
HIDE-A-WAY LAKE CLUB, INC.
No. 52382.
Supreme Court of Mississippi.
February 18, 1981.
*1334 Bobby J. Garraway, Lumberton, for appellant.
Ray M. Stewart, J. Edmand Pace, Stewart, Burks & Pace, Picayune, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
A.A. Home Improvement Co., Inc., appeals from a final decree of the Chancery Court of Pearl River County, Mississippi, ordering it to block its lot in Hide-A-Way Lake Subdivision so that the lot may not be used as a thoroughfare, and to prevent the use of the lot as a roadway.
The appellant Corporation purchased Lot 52, Unit 1, Hide-A-Way Lake Subdivision in 1974. In 1975, Mr. Erwin J. Smith purchased a tract of land adjacent to the southern boundary of Lot 52. He later conveyed title to this adjacent tract to Millbrook Estates. Both entities, A.A. Home Improvement Co., Inc. and Millbrook Estates, are owned by Mr. Smith.
Hide-A-Way Lake is a private subdivision in Pearl River County. In 1973 the developer conveyed title to certain properties to the appellee Club for the common benefit of the property owners in the subdivisions. The conveyance excepted all platted lots in Units 1 through 19 of the subdivision but included all of the developers' rights and interests in and to certain restrictive covenants, which were recorded in the office of the chancery clerk on March 14, 1969. The stated purpose of the covenants was to carry out a general plan of development and maintenance of the subdivision. They specifically delegated to the appellee Club the duty to provide, for the common benefit of lot owners, a "clubhouse and private recreational facilities in the area, and to establish and maintain parks, lanes, lakes, and security protection... ." The covenants also required lot owners to pay their share of the specific expenses required and expended to maintain the lanes, roads, parks, lakes and security protection.
Over the years the Club has contracted for security guard services. In addition, there is a fence surrounding the entire perimeter of the subdivision. There is only one entrance to the subdivision, controlled by a guardhouse located on Lakeshore Drive. A security guard is stationed at this entrance twenty-four hours a day, and he is responsible for stopping unauthorized persons from entering the subdivision. There is an emergency entrance, but it is controlled by a gate which is kept locked at all times. There are also two or three openings in the fence behind residences within the subdivision, and the owners use these openings to travel to and from an adjacent golf course. These openings are usually kept locked, and are used mainly for golf carts. There are no roads or driveways through these private entrances.
As stated above, Lakeshore Drive provides the only authorized access to the subdivision. It is not a dedicated street; it is maintained by the appellee Club, as are the other streets within the subdivision.
In March of 1976, Mr. Smith obtained a chancery court ruling that he owned that part of the fence separating his Lot 52 from his adjacent property to the south of the subdivision. In August of 1976, he removed the fence and began using Lot 52 as a connecting roadway between Lakeshore Drive in Hide-A-Way Lake and Fairway Drive in Millbrook Estates. At that time Mr. Smith had a home in Hide-A-Way Lake Subdivision. He has since sold that home, and two other homes which he built in the subdivision, and moved to Millbrook Estates. The record does not show that he owns any property in Hide-A-Way Lake Subdivision other than Lot 52. There is no home or other building on Lot 52.
The northern boundary of Lot 52 is Lakeshore Drive. Along the southern boundary of Lot 52 is a street, Fairway Drive, which is within Millbrook Estates. Millbrook Estates subdivided the property south of Lot 52, and after the subdivision began to develop, Fairway Drive was paved. The record *1335 indicates that the appellant Corporation, or other men working for Mr. Smith, placed a culvert between Fairway Drive and Lot 52, and cars and trucks began entering and exiting Hide-A-Way Lake Subdivision through Lot 52 and a corner of the adjoining Lot 53. The Board of Directors of Hide-A-Way Club, Inc., received numerous complaints from residents within the subdivision concerning unauthorized traffic within the subdivision. The complaining residents thought that the opening up of Lot 52 for vehicular traffic caused a serious breach in security in the subdivision, and there was evidence that at least one burglar had gained entrance to the subdivision through this lot. The appellee brought suit against the appellant, alleging in its bill of complaint that Mr. Smith was using Lot 52 as a public thoroughfare and was permitting the public to use Lot 52 as a thoroughfare. It was the Club's contention that to permit this use of the lot was a violation of the letter and spirit of the following restrictive covenant:
No lot shall be used for other than residential purposes (except as elsewhere herein provided)... .
The defendant answered, denying, inter alia, that it had used or allowed the public to use Lot 52 as a public thoroughfare. The lower court heard three days of testimony and also viewed the premises. In its final decree, the court made findings of fact, which included the following:
.....
(2) That said covenant [the restrictive covenant] is valid and binding and not in violation of public policy.
(3) That security and privacy of the home is a valid right subject to protections by the law.
(4) That that right has been breached by the Defendant.
(5) That the use of the roadway across Lot 52 does not constitute use of Lot 52 for residential purposes and further the placing of the culvert by the Defendant between Lot 52 and the adjacent street in Millbrook Subdivision indicates bad faith on the Defendant, and further that Lot 52 could not have been used as a roadway between the Defendant's subdivision, Millbrook Subdivision, and Hide-A-Way Lake Subdivision, had said culvert not been placed there by the Defendant.
.....
(7) That the injunction should be granted and the Defendant and its principals ordered to conform to the covenants and to prevent use of Lot 52 as a roadway, and to effectively block Lot 52 so that it may not be used as a thoroughfare.
The appellant argues that the use of the roadway across his restricted property does not violate the restrictive covenant in this case. This is a question not faced by this Court before. The appellant relies principally on three cases, Baxendale v. Property Owners Association of North Shore Acres, Inc., 138 N.Y.S.2d 76, affirmed 285 App.Div. 1148, 140 N.Y.S.2d 176, affirmed 309 N.Y. 871, 131 N.E.2d 287 (1955); Casebeer v. Beacon Realty, Inc., 248 Ark. 22, 449 S.W.2d 701 (1970); and Callaham v. Arenson, 239 N.C. 619, 80 S.E.2d 619 (1954).
The facts in Casebeer and Callaham are clearly distinguishable from the facts in this case. In Callaham, the Court held that the owner of four lots in a subdivision could locate a fifty foot street or roadway along the line between two of the lots in the subdivision without violating a restrictive covenant limiting the use of the property to residential purposes. The North Carolina Court said that ordinarily the opening and maintenance of a street or right-of-way for the better enjoyment of residential property as such does not violate a covenant restricting the property to residential purposes. It ruled that, since the intention of the owner of the property over which the right-of-way would pass was to designate it as a private drive to be used only by individuals with land abutting on the passageway and since there was no connection of the proposed right-of-way with any street or property outside the subdivision itself, the passageway would not violate the restrictive covenant limiting the use of the property to residential purposes.
*1336 In Casebeer, the Arkansas Court cited Callaham, and ruled that the owner of the property within a subdivision could construct a roadway across the land owned by it connecting two streets within the same subdivision. The restrictive covenant in that case read:
LAND USE AND BUILDING TYPE.
No lot shall be used except for residential purposes.
The Baxendale case is distinguishable because the restrictive covenants in that case were not the same as those in this case. In Baxendale the plaintiff sought a declaratory judgment establishing his right to construct a public road over a lot in a subdivision restricted as follows:
All plots be known and described as residential plots... . No buildings of any kind shall be hereafter erected upon premises except one detached single dwelling... . [N]othing shall be done thereon which may be or become an annoyance or nuisance of the neighborhood.
The Court, noting that a road is not a building, held that nothing in these covenants prevented the construction on plaintiff's property of a public road for ingress to and egress from adjoining property. Such a road did not violate the restrictions against offensive trades and it was not per se an annoyance or a nuisance.
The appellee relies principally on Long v. Branham, 271 N.C. 264, 156 S.E.2d 235 (1967). In that case, the North Carolina Court cited five cases in which courts refused to enjoin the use of a roadway over property restricted to residential use only;[1] and five cases in which courts did enjoin the use of a roadway over property restricted to residential use only.[2]
In the Long case the Court posed the question thusly:
Do the restrictions which provide that no lot in Timbercrest Subdivision "shall be used except for residential purposes" prevent an owner from constructing across a part of his lot within the subdivision a roadway connecting a street in Timbercrest with one in the adjoining subdivision of Oak Hills, which is protected by restrictions substantially similar to those of Timbercrest? The Court, after noting that each case must be determined on its own particular facts, ruled that, nothing else appearing, restrictions imposed upon a particular subdivision are for the benefit of that particular development and no other. Therefore, it reasoned, if its lots are restricted to residential use only, that is tantamount to saying that they are restricted solely to residential use in that subdivision. The Court then held that the restrictive covenants in Timbercrest Subdivision precluded the road proposed by the defendant. The Court also distinguished the Callaham case because the streets which were the subject of controversy in that case were all within the original subdivision. There was no plan to connect the new streets with those of any adjoining development, and the opening of additional streets within that subdivision was within the contemplation of the parties.
In construing restrictive covenants, the question is primarily one of intention, and the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by a fair interpretation of the entire text of the covenant. See, Annot., 25 A.L.R.2d 904, 905 (1952); 20 Am.Jur.2d Covenants, Conditions and Restrictions, § 232 (1965).
There is no ambiguity in the expression "No lot shall be used for other then residential purposes." Any additional use must be reasonably incidental to residential uses and such an inconsequential breach of the covenant as to be in substantial harmony with the purpose of the parties in making the covenants, and without substantial *1337 injury to the neighborhood. See Thompson v. Squibb, 183 So.2d 30 (Fla.D.C.App.2d 1966). It is obvious that the use of Lot 52 on which there is no residence as a connecting roadway to an adjoining subdivision is not in any sense a residential use or a use incidental thereto. In this case, the sole purpose of the roadway is to provide a means of ingress and egress between two subdivisions. It destroys the self-contained aspect of the subdivision, and the security that goes along with it. It also imposes additional traffic on the roads of the subdivision. The covenant which requires the appellee Club to maintain the roads, with the expense to be shared by all lot owners, shows an intent not to enlarge the exposure of the streets to more traffic than the layout of the plat and its connections would produce.
We, therefore, hold that the lower court was correct in enjoining the use of this lot as a roadway, and ordering the appellant to block the roadway across the lot so that it could not be used as a public thoroughfare.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., SUGG, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Bove v. Giebel, 169 Ohio St. 325, 159 N.E.2d 425; R.R. Improvement Association v. Thomas, 374 Mich. 175, 131 N.W.2d 920; Baxendale, supra; Mairs, et al. v. Stevens, et al., 268 App. Div. 922, 51 N.Y.S.2d 286; Vinyard v. St. Louis County, 399 S.W.2d 99 (Mo. 1966).
[2] Duklauer v. Weiss, 18 Misc.2d 747, 182 N.Y.S.2d 193; Donald E. Baltz, Inc. v. R.V. Chandler & Co., 248 S.C. 484, 151 S.E.2d 441 (1966); Klapproth v. Grininger, 162 Minn. 488, 203 N.W. 418, 39 A.L.R. 1080; Thompson v. Squibb, 183 So.2d 30 (Fla.D.C.App.2d 1966).