DONALDSON v. SHEARIN

[142 N.C. App. 102 (2001)]

JEFFREY DONALDSON, Plaintiff v. JAMES LARRY SHEARIN and
FRANCES B. SHEARIN, Defendants

No. COA00-276

(Filed 6 February 2001)

## 1. Deeds— restrictive covenants—number of buildings per lot limited—lots re-divided

The trial court erred by ordering that defendants not be permanently enjoined from placing one double wide mobile home on each of defendants' lots where the two lots had originally been one and where restrictive covenants from that time imposed a limit of one dwelling per lot. The language of the covenants suggest that the intent of the developer was to restrict the number of structures on each of the lots as originally platted and to place a restriction on the number of single family dwellings constructed in any one area of the subdivision. This purpose cannot be achieved under defendants' interpretation of the covenants, which would not limit the number of dwellings on the original lots so long as the landowner re-divided the lots.

## 2. Injunctions— enforcement of restrictive covenants—remedy

In an action for a permanent injunction to enforce restrictive covenants remanded on other grounds, the trial court must fashion an appropriate remedy for any violation of the covenants. The appropriateness of the remedy is clearly within the province of the trial court.

Judge Tyson dissenting.

Appeal by plaintiff from judgment filed 21 December 1999 by Judge Robert A. Evans in Nash County District Court. Heard in the Court of Appeals 23 January 2001.

*Massengill & Bricio, P.L.L.C., by Clint E. Massengill, for plaintiff-appellant.*

*Dill, Fountain, Hoyle, Pridgen & Stroud, L.L.P., by William S. Hoyle, for defendant-appellees.*

GREENE, Judge.

Jeffrey Donaldson (Plaintiff) appeals a judgment filed 21 December 1999, in favor of James Larry Shearin and Frances B. Shearin (collectively, Defendants).

DONALDSON v. SHEARIN

[142 N.C. App. 102 (2001)]

The record shows that on 13 July 1989, Floyd B. Braswell, Rosie V. Braswell, O.B. Parker, and Shirley V. Parker (collectively, the Developer) recorded a map entitled "Final Plat of Parker Towne, Oak Level Township, Nash County, North Carolina" (the plat) in Map Book 18, Page 92 of the Nash County Registry. The plat subdivided a 27.40 acre tract of land (the Parker Towne Subdivision) into seven tracts of land. The seven tracts, numbered on the plat as lots 1 through 7, ranged in size from 2.31 acres to 5.7 acres.

On 28 July 1989, the Developer filed with the Nash County Registry a document entitled "DECLARATION OF PROTECTIVE COVENANTS[:] PARKER TOWNE SUBDIVISION" (the Restrictive Covenants). The Restrictive Covenants state, in pertinent part:

> [The Developer] do[es] hereby covenant and agree with all persons, firms and corporations hereafter acquiring any of the real estate hereinafter described that said real estate is subjected to the restrictions hereinafter set forth as the use and occupancy thereof.
>
> The real estate to which these Restrictive Covenants shall apply is Lots 1 through 7 inclusive as shown on Final Plat of Parker Towne, Oak Level Township, Nash County, North Carolina by Joyner, Keeny & Associates, which plat is recorded in Map Book 18, Page 92 of the Nash County Registry.
>
> The above described property is hereby subjected to the following restrictions as to the use and occupancy thereof.
>
> 1. No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot, other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage and/or workshop for personal use, and other out buildings incidental to residential use of the lot.
>
> . . . .
>
> 8. On Lots 1, 2, 3 and 4 there shall only be permitted double wide mobile homes of good quality with brick underpinning or conventionally constructed homes containing at least 1,200 square feet of heated area.

On 28 July 1989, Plaintiff recorded at the Nash County Registry a deed conveying "Lot 3" of the Parker Towne Subdivision from the Developer to Plaintiff. The deed stated, "THIS CONVEYANCE is made

subject to those Restrictive Covenants recorded in Book 1283, Page 203, Nash County Registry."

On 31 August 1989, the Developer and Defendants entered into a "CONTRACT TO PURCHASE REAL ESTATE." In the contract, Defendants agreed to purchase from the Developer "Lot 4" of the Parker Towne Subdivision. The contract stated Lot 4 was subject to "Restrictive Covenants recorded in Book 1283, Page 203, Nash County Registry." The contract was filed with the Nash County Registry on 5 September 1989. On 25 May 1990, Defendants recorded a plat with the Nash County Registry that subdivided Lot 4 into two lots: Lot 4(1), consisting of .69 acres, and Lot 4(2), consisting of 4.84 acres.[1] Then, on 12 April 1999, Defendants recorded a deed with the Nash County Registry conveying "Lot 4" of the Parker Towne Subdivision from the Developer to Defendants.

On 26 May 1999, Plaintiff filed a complaint in the Nash County District Court, alleging Defendants intended to violate the Restrictive Covenants "by placing two family dwellings on Lot 4 of the Plat." Plaintiff alleged:

> [T]he evidence of Defendants' intent is as follows: (1) Defendants and other parties aligned with . . . Defendants have repeatedly requested that Plaintiff waive his rights under the Restrictive Covenants and permit two family dwellings on Lot 4 of the Plat; (2) Defendants have applied for two permits from Nash County to place septic tanks on Lot 4 of the Plat; (3) Defendants have staked out the ground and prepared the Lot to receive two dwellings . . . ; and (4) Defendant James Shearin stated to an acquaintance on Sunday, May 23, 1999, that he intended to move a single wide and a double wide mobile home onto Lot 4 of the Plat during the week of May 24, 1999.

Plaintiff's complaint requested "Defendants be perpetually enjoined from violating the Restrictive Covenants by an injunction ordering and requiring Defendants to comply with the restrictions," as well as a "temporary restraining order . . . followed by a preliminary injunction requiring Defendants to cease and desist from violating the restrictions of the Restrictive Covenant[s]."

On 26 May 1999, the Nash County District Court issued a temporary restraining order that "restrained and enjoined [Defendants]

---

1. Although the 25 May 1990 plat refers to the two subdivided lots as lot "1" and lot "2," we refer to these lots as lot "4(1)" and lot "4(2)."

from placing two family dwellings on Lot 4 of [the] Parker Towne Subdivision" until "further hearing on this matter or the expiration of this Temporary Restraining Order." In an amended complaint filed 21 June 1999, Plaintiff alleged Defendants had violated the Restrictive Covenants by "placing two family dwellings on Lot 4." Defendants, in an answer filed 21 July 1999, "admitted that Plaintiff's Lot and Defendants' Lots are subject to restrictive covenants recorded in Book 1283, Page 203, Nash County Registry." Defendants, however, denied having placed two dwellings on a single lot; rather, Defendants stated they had placed one dwelling on Lot 4(1) and one dwelling on Lot 4(2).

On 3 August 1999, the Nash County District Court granted a preliminary injunction in favor of Plaintiff. The preliminary injunction enjoined Defendants from "altering the present status concerning the establishment or set up of two dwellings on Lot 4 as it is depicted at. Map Book 18, Page 92, Nash County Registry." On 19 October 1999, the trial court held a hearing on Plaintiff's complaint. In an order filed 21 December 1999, the trial court made the following pertinent findings of fact:

10. Lot 4 originally consisted of 5.53 acres.

. . . .

12. Defendants re-subdivided Lot 4 into two lots, shown as Lots 1 and 2 on a map recorded in Plat Book 19, Page 105 of the Nash County Registry . . . .

13. Defendants placed one (1) double wide mobile home on each of Defendants' Lots.

. . . .

16. The [Restrictive Covenants] contain no minimum lot size restrictions, and no side, front or rear setback restrictions.

17. The Nash County Zoning Ordinance does not prohibit the re-subdivision of lots in Parker Towne Subdivision.

18. Plaintiff conceded at trial that the [Restrictive Covenants] do not prohibit re-subdivision of Defendants' Lot 4, but contends that the [Restrictive Covenants] prohibit more than one dwelling on Lot 4 as originally platted.

The trial court then made the following pertinent conclusions of law:

2. Defendants are not prohibited by the [Restrictive Covenants] or the Nash County Zoning Ordinance from re-subdividing Lot 4 as show[n] in Plat Book 18, Page 92.

3. Defendants have not placed two (2) [dwellings] on one (1) lot of Parker Towne Subdivision.

4. Defendants['] placement of one (1) double-wide mobile home on each of Defendants' Lots is not a violation of the [Restrictive Covenants] or the Nash County Zoning Ordinance.

The trial court, therefore, dissolved the preliminary injunction and ordered that "Defendants shall not be permanently enjoined from placing one double wide mobile home on each [of] Defendants' Lots."

_____

The issues are whether: (I) the Restrictive Covenants were intended to restrict the number of single family dwellings on the lots in the Parker Towne Subdivision as originally platted or as re-subdivided; and (II) this Court may determine the appropriate equitable remedy for the violation of a restrictive covenant when the trial court has not made findings on the appropriate equitable remedy.

I

[1] Plaintiff argues the Restrictive Covenants prohibit the construction of more than one single family dwelling on any of the lots as originally platted and as recorded in Map Book 18, Page 92 of the Nash County Registry. In contrast, Defendants argue the restrictions placed on the lots in the Restrictive Covenants apply to the lots as they existed subsequent to their re-subdivision rather than as originally platted.

"In construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions." *Long v. Branham,* 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967). Because restrictive covenants "limit the free use of property," they are strictly construed. *Robinson v. Pacemaker Investment Co.,* 19 N.C. App. 590, 594, 200 S.E.2d 59, 61 (1973), *cert. denied,* 284 N.C. 617, 201 S.E.2d 689 (1974). Nevertheless, restrictive covenants should not be so strictly construed "as to defeat the purpose of the restriction." *Id.*

## DONALDSON v. SHEARIN

[142 N.C. App. 102 (2001)]

In this case, the Restrictive Covenants limit the construction on each "lot" to "one detached single family dwelling." The Restrictive Covenants describe the lots subject to the restrictions as "[l]ots 1 through 7 inclusive as shown on Final Plat of Parker Towne [subdivision] . . . recorded in Map Book 18, Page 92 of the Nash County Registry." This language suggests the intent of the Developer was to restrict the number of structures constructed on each of the seven lots as originally platted. *See id.* at 594-96, 200 S.E.2d at 62 (language of restrictive covenants is one factor to consider when determining the intention of the parties). Additionally, the purpose of Paragraph 1 of the Restrictive Covenants is to place a restriction on the number of single family dwellings constructed in any one area of the Parker Towne Subdivision. This purpose cannot be achieved by Defendants' proposed interpretation of the Restrictive Covenants. Under Defendants' proposed interpretation, a landowner in the Parker Towne Subdivision would not be limited in any way as to the number of single family dwellings constructed on his or her lot as originally platted, so long as the landowner re-subdivided the lot into additional lots. Such interpretation, which would place no limit on the number of single family dwellings constructed in any one area of the Parker Towne Subdivision, defeats the purpose of the restriction set forth in the Restrictive Covenants. *See id.* (purpose of restrictive covenants is one factor to consider when determining the intent of the parties). We therefore hold, based on the language and purpose of the Restrictive Covenants, that the Restrictive Covenants restrict the number of single family dwellings permitted on the lots as originally platted. It follows the placement by Defendants of more than one single family dwelling on Lot 4 violates the Restrictive Covenants. Accordingly, we reverse the trial court's 21 December 1999 order in favor of Defendants.

Defendants argue in their brief to this Court, pursuant to *Callaham v. Arenson*, 239 N.C. 619, 80 S.E.2d 619 (1954), and *Robinson*, that the lots in the Parker Towne Subdivision "could be subdivided without violating the applicable restrictive covenants." We first note that the issue in the case *sub judice* is not whether the Restrictive Covenants prohibit re-subdivision of the lots in the Parker Towne Subdivision; rather, the issue is whether the dwelling-restrictions in the Restrictive Covenants apply to the lots as originally platted or as re-subdivided. Although we agree with Defendants that the teachings of *Callaham* and *Robinson* govern the interpretation of the Restrictive Covenants in this case, we do not agree with Defendants' reading of these cases. In both *Callaham* and *Robinson*, the restric-

tive covenants at issue were interpreted based on the intent of the parties. In those cases, the restrictive covenants contained restrictions on the minimum area of the lots in the subdivisions. *Callaham,* 239 N.C. at 626, 80 S.E.2d at 624; *Robinson,* 19 N.C. App. at 596, 200 S.E.2d at 62. As those minimum areas were less than the areas of the lots as originally platted, the *Callaham* and *Robinson* courts held the parties must have intended the restrictions in the restrictive covenants to apply to the lots as re-subdivided. *Callaham,* 239 N.C. at 626, 80 S.E.2d at 624; *Robinson,* 19 N.C. App. at 596, 200 S.E.2d at 62. Otherwise, the minimum area requirements in the restrictive covenants would be meaningless. *Callaham,* 239 N.C. at 626, 80 S.E.2d at 624; *Robinson,* 19 N.C. App. at 596, 200 S.E.2d at 62. In contrast, in the case *sub judice,* the Restrictive Covenants do not contain any restrictions on the minimum area of the lots. When ascertaining the intent of the Developer, this factual distinction results in a different outcome in the case *sub judice* than the outcomes in *Callaham* and *Robinson.*

II

**[2]** Plaintiff argues the trial court erred by failing to grant a mandatory injunction ordering Defendants to remove from Lot 4 any dwelling home that was placed on that lot in violation of the Restrictive Covenants.

"A mandatory injunction may be an appropriate remedy to compel the removal or modification of a building erected in violation of a restrictive covenant." *Crabtree v. Jones,* 112 N.C. App. 530, 534, 435 S.E.2d 823, 825 (1993), *disc. review denied,* 335 N.C. 769, 442 S.E.2d 514 (1994). Because a mandatory injunction is based on the equities between the parties, the appropriateness of the remedy is "clearly within the province of the trial court." *Id.* (remanding case to trial court for determination of appropriate equitable remedy).

In this case, because the trial court concluded Defendants did not violate the Restrictive Covenants, the trial court did not make any findings regarding an appropriate remedy for any violation. We, therefore, remand this case to the trial court for entry of judgment in Plaintiff's favor. On remand, the trial court must fashion an appropriate remedy for any violation of the Restrictive Covenants.

Reversed and remanded.

Judge HORTON concurs.

DONALDSON v. SHEARIN

[142 N.C. App. 102 (2001)]

Judge TYSON dissents.

TYSON, Judge, dissenting.

I would affirm the trial court's dissolution of the preliminary injunction and denial of the permanent injunction. "[R]estrictive servitudes are in derogation of the free and unfettered use of land." *Callaham v. Arenson*, 239 N.C. 619, 625, 80 S.E.2d 619, 624 (1954); *see also, Ingle v. Stubbins*, 240 N.C. 382, 82 S.E. 2d 388 (1954); 1 Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 18-6, at 840 (5th ed. 1999).

The covenants and agreements which impose such restrictions must be "strictly construed against limitation on use." *Callaham* at 625, 80 S.E.2d at 624. In *Callaham*, our Supreme Court noted that "restrictive covenants clearly expressed may not be enlarged by implication or extended by construction. They must be given effect and enforced as written." *Id.* In *Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967), our Supreme Court summarized the rules of construction applicable to restrictive covenants:

'Covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction to affect lands not specifically described, or to grant rights to persons in whose favor it is not clearly shown such restrictions are to apply. *Doubt will be resolved in favor of the unrestricted use of property, so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.*'

*Id.* at 268, 156 S.E.2d at 239 (quoting 20 Am.Jur.2d, *Covenants, Conditions and Restrictions*, s. 187 (1965)) (emphasis supplied).

"The key to interpreting restrictive covenants is the intention of the parties." *Robinson v. Pacemaker Investment Co.*, 19 N.C. App. 590, 595, 200 S.E.2d 59, 61 (1973), *cert. denied*, 284 N.C. 617, 201 S.E.2d 689 (1974) (citations omitted). The majority believes that the language in the covenants as a whole suggests that the developer intended to restrict the number of structures on the lots as originally platted, and that any other construction would defeat the purpose of the covenants.

DONALDSON v. SHEARIN

[142 N.C. App. 102 (2001)]

However, the evidence showed that defendants recorded a plat on 25 May 1990 which showed re-subdivision of lot 4. Defendants recorded a deed with the Nash County Registry conveying Lot 4 from the developer to defendants on 12 April 1999. The plat showing defendants' subdivision of the lot was of record nearly nine years prior to conveyance of the deed. At no time did plaintiff or the developer object to defendants' re-subdivision of the lot, or raise any issue about the number of dwellings permitted on the re-subdivided lot.

The words the developer used in the covenant itself are the most indicative of intent: "[n]o building shall be erected, altered, placed or permitted to remain on any lot, other than one detached single family dwelling. . . ." The plain meaning of the words in the covenants convey *only* an intent that a single dwelling be placed on a single lot. The covenants do not prohibit re-subdivision of the lots, or address re-subdivision in any respect.

The effect of the majority's decision is to enlarge by implication and extend by construction the plain meaning of the words in the covenants. This we cannot do. As the Supreme Court noted in *Callaham*, the plaintiffs' proposed plan to subdivide "when interpreted in the light of the applicable rules of law comes within the terms of the restrictive covenants under review. As parties bind themselves so must the courts leave them bound." *Callaham* at 626, 80 S.E.2d at 625.

The plain meaning of the words do not prohibit defendants from placing "one detached single family dwelling" on "any lot" when enforced as written and strictly construed against limitation on use. *Callaham* at 625, 80 S.E.2d at 624; *Long* at 268, 156 S.E.2d at 239. Accordingly, I respectfully dissent.